EDWARD J. SEPERACK ET AL. *v.* EFFIE SOLAZ
(6581)

BORDEN, DALY and FOTI, Js.

Submitted on briefs December 22, 1988—decision released March 21, 1989

*Laurence V. Parnoff* filed a brief for for the appellants (plaintiffs).

*Lawrence A. Ouellette, Jr.,* filed a brief for the appellee (defendant).

FOTI, J. In this negligence action, stemming from an automobile accident, the plaintiffs[1] appeal from the judgment rendered in their favor, after a jury trial, challenging the adequacy of the jury's award of damages. The plaintiff claims the court erred (1) in giving a *Secondino* instruction to the jury, (2) in failing to

---

[1] There are two plaintiffs to this action, Edward Seperack and his wife, Maryann Seperack, who sought damages for loss of consortium. Edward Seperack hereinafter will be referred to as the plaintiff.

admit certain medical reports into evidence, (3) in failing to instruct the jury, as the plaintiff requested, on the issue of permanency, and (4) in failing to set aside the verdict as inadequate. We find no error.

I

The plaintiff's first claim is that the trial court erred in instructing the jury that it could draw an adverse inference from the fact that he failed to call as witnesses his treating physicians, whose reports had been submitted into evidence pursuant to General Statutes § 52-174 (b).[2] We disagree.

The plaintiff's complaint did not specify the exact nature of the injuries sustained as a result of the accident but only that he had suffered "permanent" and "serious" injuries. Prior to trial, the only related medical conditions disclosed by the plaintiff were an injury to his upper back and neck, headaches and memory loss. On August 24, 1987, the date the case was called for trial, the plaintiff disclosed that in addition to his neck and upper back injury, he was also claiming a related injury to his lower back. He claimed that he had been receiving treatment for a herniated disc in his lower back since May, 1986, and that surgery was required to cure this ailment.

During the trial, pursuant to General Statutes § 52-174 (b), the plaintiff introduced into evidence a number of documents relating to the injuries he sustained as a result of the accident, including certain

---

[2] General Statutes § 52-174 (b) provides: "In all actions for the recovery of damages for personal injuries or death, pending on October 1, 1977, or brought thereafter, any party offering in evidence a signed report and bill for treatment of any treating physician, dentist, chiropractor, osteopath, natureopath or podiatrist may have the report and bill admitted into evidence as a business entry and it shall be presumed that the signature on the report is that of the treating physician, dentist, chiropractor, osteopath, natureopath or podiatrist and that the report and bill were made in the ordinary course of business."

Bridgeport Hospital records indicating that the plaintiff had complained of pain in his neck and right shoulder and the following reports prepared by the plaintiff's treating physicians: Eugene Citrano's report diagnosing the plaintiff's injuries as "muscular and ligamentous strain and sprain of the neck and back"; David B. Brown's report which referred only to injuries to the upper back and neck; K. N. Sena's report, prepared more than fourteen months after the accident, which indicated that the plaintiff was suffering from mid lower back pain; and the report of Robert Russo, Jr., which noted "a minimal bulge of the annulus . . . at L5-S1."

The defendant presented evidence that Citrano, Brown, Sena and physician Laurence J. Guido were available and requested the court to give a *Secondino* charge.[3] The defendant argued that the plaintiff had the burden of showing that the herniated disc in his lower back was caused by the accident, and that, consequently, the treating physicians should have been produced by the plaintiff to clear up the ambiguities in their respective reports.

In addition to giving a *Secondino* charge, the court read General Statutes § 52-174 (b) and (c) verbatim to the jury. The court instructed the jury that in considering whether it would be natural for the plaintiff to produce a witness, the jury also should consider General Statutes § 52-174 (b), which permits the plaintiff to introduce reports and bills of a treating physician without the necessity of producing the physician as a witness at trial. The court also instructed the jury that it should consider evidence of the plaintiff's attempts to present these witnesses and the difficulties involved in procuring a doctor's in-court appearance.

---

[3] In *Secondino* v. *New Haven Gas Co.*, 147 Conn. 672, 674–76, 165 A.2d 598 (1960), our Supreme Court approved the rule permitting a negative inference to be drawn in a case in which a party fails to call a witness who was available to him and whom he would naturally be expected to produce.

The plaintiff's first challenge to this charge is that it was improper per se for the court to instruct the jury that it could draw an adverse inference from his failure to produce the treating physicians at trial because such a charge specifically negates the purpose, intent and rationale of General Statutes § 52-174 (b). We find this argument unpersuasive.

This court has implicitly affirmed the use of a *Secondino* charge as a proper vehicle for a defendant to challenge a plaintiff's medical evidence albeit introduced pursuant to General Statutes § 52-174 (b). See *Pulaski* v. *Ledwith,* 5 Conn. App. 629, 632, 501 A.2d 396 (1985), cert. denied, 198 Conn. 803, 503 A.2d 1186 (1986); see also *Grabowski* v. *Fruehauf Trailer Corporation,* 2 Conn. App. 167, 477 A.2d 685 (1984). The inclusion of a *Secondino* charge in a case in which a plaintiff takes advantage of the liberal evidentiary provisions of General Statutes § 52-174 (b) does not, as the plaintiff asserts, negate the purpose of this provision, nor does the language of the statute preclude such a charge.

General Statutes § 52-174 (b) permits a party, in an action for personal injuries, to introduce as a business record a physician's signed treatment report and bills. This statute serves the remedial purpose of relieving a party from the burden of establishing the evidentiary prerequisites for introducing a business record. See General Statutes § 52-180. The rationale for allowing self-authenticating documents from physicians in personal injury or wrongful death actions is to avoid trial delays due to the difficulty in scheduling doctors' appearances; especially because in the majority of cases the physician's testimony is consistent with his treatment report. See Conn. Joint Standing Committee Hearings, Judiciary, Pt. 3, 1977 Sess., pp. 689–90, testimony of Richard Bieder and Sen. Salvatore C. DePiano.

Furthermore, the language of this statute is permissive, and does not preclude the giving of a *Secondino* charge in a case in which a party utilizes General Statutes § 52-174 (b). Section (c) of the statute expressly provides: "This section shall not be construed as prohibiting either party or the court from calling the treating physician . . . . as a witness." Thus, even though a party takes advantage of this evidentiary shortcut to the introduction of a physician's report, he or opposing counsel remains at liberty to call the witness to explain or supplement a written report. When a party's failure to produce a physician can be attributed to General Statutes § 52-174, that party can request a jury instruction explaining the statute and its purpose.

General Statutes § 52-174 is a rule of judicial economy and does not, by implication or statutory fiat, lend instant credibility to a doctor's report. "Once in evidence, the [physician's] report and the hospital records are subject to the same standards of credibility as any other evidence." *Pulaski* v. *Ledwith,* supra, 632. "It is basic that the merit of each party's presentation is to be evaluated not only in the light of the evidence he produces at trial but also in consideration of the evidence available to him that he would naturally be expected to produce if it were favorable to him. 'It is an ancient maxim that all evidence is to be weighed according to the proof which it was in the power of one side to have produced and in the power of the other side to have contradicted.' *Secondino* v. *New Haven Gas Co.,* 147 Conn. 672, 674, 165 A.2d 598 (1960)." *Pedersen* v. *Vahidy,* 209 Conn. 510, 524–25, 552 A.2d 419 (1989). On the basis of the language of this statute and its purpose, we conclude that it is not improper per se to give a *Secondino* charge in a case in which a party has introduced physicians' reports pursuant to General Statutes § 52-174 (b).

Having determined that General Statutes § 52-174 does not preclude the court from giving an adverse inference charge, we must decide whether the charge was appropriately given under the circumstances of this case. We conclude that the instruction was proper.

The *Secondino* rule is well established and permits a jury to draw the adverse inference that the failure of a party to produce a witness implies that that witness, if called, would have exposed facts unfavorable to the party's cause. *Canton Motorcar Works, Inc.* v. *DiMartino,* 6 Conn. App. 447, 460, 505 A.2d 1255, cert. denied, 200 Conn. 802, 509 A.2d 516 (1986); *Secondino* v. *New Haven Gas Co.,* supra, 675. In order to draw this inference, the jury must first find (1) that the witness was available, and (2) that the witness was one the party would naturally produce. *Grabowski* v. *Fruehauf Trailer Corporation,* supra, 170; *Secondino* v. *New Haven Gas Co.,* supra. " ' "To charge a party on this rule, the party claiming the benefit of the rule must show he is entitled to it. . . . " ' " (Citations omitted.) *Grabowski* v. *Fruehauf Trailer Corporation,* supra, citing *Nichols* v. *Coppola Motors, Inc.,* 178 Conn. 335, 340–41, 422 A.2d 260 (1979).

The plaintiff does not contest the availability of the physicians but argues that there was no basis in the evidence for the court to give the adverse inference charge because the evidence demonstrated that the physicians, if called to testify, would have supported the plaintiff's position. We presume that the plaintiff is challenging the second requirement under *Secondino* and arguing that he would not naturally produce the physicians because their testimony would merely have been repetitious of their treatment reports. The record in this case demonstrates that the trial court could reasonably have found that their testimony might have aided the jury in reaching its verdict, and would not have been merely cumulative.

Guido's report indicated a diagnosis of a ruptured disc in the plaintiff's lower back. The balance of the other medical evidence showed no indication of related lower back problems for approximately fifteen months of treatment after the accident. Russo's x-ray report indicated only a minimal bulge, as opposed to a ruptured or herniated disc approximately two and one-half years after the accident. The defendant offered the testimony of Anthony Camarda, the defendant's examining physician, that established that no doctor could, with a reasonable degree of medical certainty, diagnose and connect to the accident a ruptured disc without first acquiring further evidence or undertaking tests as to the condition's being more than a "minimal bulge" and obtaining information as to whether the plaintiff ever had symptoms relating to the lower back during the first fifteen months after the accident. The physicians could have advised the jury as to whether there were any complaints of pain or injury to the lower back prior to the plaintiff's first reporting it, fifteen months after the accident, and whether those medical reports admitted into evidence that merely referred to back pain specifically meant upper or lower back pain.

A *Secondino* charge merely gives rise to a "permissive inference and not to a mandatory presumption." *Grabowski* v. *Fruehauf Trailer Corporation,* supra, 172. The trial court instructed the jury that it was for them to decide whether or not to draw the adverse inference, and in making that determination, explained that they should consider the fact that the plaintiff properly admitted the physicians' records pursuant to General Statutes § 52-174 (b). The extent to which the physicians' testimony may have been cumulative, is a factor for the jury to consider when determining whether to draw an adverse inference. *Grabowski* v. *Fruehauf Trailer Corporation,* supra, 172. We conclude that under the circumstances of this case the

defendant was entitled to a *Secondino* charge because it was shown the physicians were available and, by virtue of their relationship to the plaintiff and the issues, could reasonably have been expected to have superior information concerning the case, which, if favorable, the plaintiff would naturally have produced.

## II

The plaintiff next claims that the trial court erred in refusing to admit into evidence a medical report of one of the treating physicians, David B. Brown. After the plaintiff rested his case and the defendant began to present his, the plaintiff attempted to offer a second medical report prepared by Brown that had not been disclosed previously in response to the defendant's pretrial discovery requests. The trial court disallowed this document pursuant to Practice Book § 231[4] on the ground that it was untimely. The plaintiff argues that he made a good faith attempt to comply with Practice Book § 228[5] but that he was unaware of that report prior to the time he attempted to introduce it. The plaintiff contends that he first became aware of the existence of the report through the defendant's efforts in subpoenaing the file of another doctor that contained a copy of Brown's report.

---

[4] Practice Book § 231 provides in pertinent part: "If any party has failed to answer interrogatories or to answer them fairly . . . or has failed otherwise substantially to comply with any other discovery order . . . the court may, on motion, make such order as the ends of justice require. Such orders may include the following . . . (d) The entry of an order prohibiting the party who has failed to comply from introducing designated matters in evidence."

[5] Practice Book § 228 provides in pertinent part: "The party to whom the request is directed or his attorney shall file and serve a written response within thirty days after the filing of the notice required by Sec. 227 (b), unless:

"(a) Counsel file with the court a written stipulation extending the time within which responses may be served; or

"(b) Upon motion, the court allows a longer time . . . ."

"When a party fails to comply with the requirements of Practice Book [§ 232], the trial court is authorized, pursuant to Practice Book § 231 (d) to prohibit the party from introducing designated matters into evidence." *Perry* v. *Hospital of St. Raphael,* 17 Conn. App. 121, 123, 550 A.2d 645 (1988). The consequences of a party's failure to comply with discovery requests should fall on that party. *Caccavale* v. *Hospital of St. Raphael,* 14 Conn. App. 504, 508, 541 A.2d 893 (1988).

Our role as a reviewing court is to measure "the trial court's action against the familiar standard that, in deciding whether to impose a sanction of exclusion . . . the trial court has wide discretion, to which great weight and every reasonable presumption of correctness should be afforded, and that the ultimate issue is whether the court could have reasonably reached its conclusion." *Kemp* v. *Ellington Purchasing Corp.,* 9 Conn. App. 400, 404, 519 A.2d 95 (1986); *Caccavale* v. *Hospital of St. Raphael,* supra, 507–508; *Cronin* v. *Blaisdell,* 12 Conn. App. 632, 634–35, 533 A.2d 884 (1987); *Zimny* v. *Cooper-Jarrett, Inc.,* 8 Conn. App. 407, 422–27, 513 A.2d 1235, cert. denied, 201 Conn. 811, 516 A.2d 887 (1986); *Perez* v. *Mount Sinai Hospital,* 7 Conn. App. 514, 517–19, 509 A.2d 552 (1986).

Applying these principles to the facts of this case, we conclude that the trial court did not abuse its broad discretion in excluding Brown's medical report, which was not disclosed in compliance with the requirements of Practice Book § 232. The record reveals that Brown was one of the plaintiff's treating physicians. In response to the defendant's interrogatories, the plaintiff submitted, as evidence of special damages, a bill from Brown for $435. The plaintiff had in his possession and was permitted to introduce another letter from Brown dated May 16, 1984, that discussed his diagnosis of the plaintiff's injuries. The letter in question, which the plaintiff attempted to introduce, was

addressed to Citrano and dated February 1, 1984. As Brown was one of the plaintiff's treating physicians and his witness, the plaintiff had the opportunity and duty to obtain whatever records Brown prepared that were related to his case. We find the principle adopted in *Sturdivant* v. *Yale-New Haven Hospital,* 2 Conn. App. 103, 106, 476 A.2d 1074 (1984), appropriate here: "The rules of discovery are designed to make a ' "trial less of a game of blindman's buff and more a fair contest with the basic issues and facts disclosed to the fullest practical extent." ' *United States* v. *Procter & Gamble,* 356 U.S. 677, 682, 78 S. Ct. 983, 2 L. Ed. 2d 1077 (1958)."

### III

The plaintiff's third claim of error is that the trial court erred in refusing to instruct the jury, as the plaintiff had requested, that the plaintiff's disability would in all probability be permanent, and that the jury could consider his testimony on the issue of permanency as to his physical limitations.

This is not a case in which the trial court instructed the jury not to consider the permanency of the plaintiff's injury. Compare *Niles* v. *Evitts,* 16 Conn. App. 696, 698–99, 548 A.2d 1352 (1988). Rather, in this case, the court in its charge specifically addressed the issue of permanency.[6] In its charge, the court reviewed the

---

[6] The relevant portion of the court's instruction follows: "Now let's talk about a few of the areas in question. You've heard and seen, or will see, the hospital report and the doctors' reports. There were some findings as to the immediate injuries. The loss of consciousness, the fact that there was a hospitalization, that there were painful areas of the body reported, the various injuries that were immediately reported, or symptoms complained of at the time of the hospital treatment. You've heard the plaintiff describe his course of recovery. The fact that, at the present time, he describes various symptoms, which he indicates are still of his physical presence.

"You've also heard testimony, or seen, or will be seeing reports, if you haven't, concerning various opinions of doctors concerns the results of the

conflicting evidence presented by both parties and instructed the jury that the ultimate determination on whether the plaintiff was permanently injured was a question of fact for them to decide after weighing all the evidence.

accident. And of course, we also have the situation, which the court would make the observation, is obviously highly in dispute as to this disc, which has a swelling to it. And whether, first of all, it was the result of the accident in question. And secondly, the nature of its consequences as to its permanency, etc. And of course these are all facts that you're going to have to determine, because depending on those facts, which you find proven, as to those injuries and consequences, which you find were connected or foreseeable consequences, of the accident, for all those you must come up with, what you believe to be a fair amount in money damages for those consequences.

"The plaintiff, in this particular case, through his attorney, of course claims that he has a permanent injury, in the fact that he has this disc that is, at this point, minimally impinging, according to the testimony I heard at least, on some part of his spinal column. And of course it is his claim that the resulting pain, and of course the resulting lack of his ability to go about his normal activities, all are a result of this particular situation.

"The defense, of course, in this particular issue, makes the claim and through Dr. Carmada presented some testimony that this was a matter that was not permanent, was of relatively little consequence and there is not to be much made of this particular injury. And of course also, that it is the other claim of the defendant is, that there is no clear chain of events to connect this particular injury to the incident in question.

"So this is one of the very cutting edges of your function here, because you are the trier of facts and with the standard of knowing that it is the burden of the plaintiff to prove those claims, the plaintiff makes, if you believe, by a fair preponderance of the evidence, all, or some, or any of these claims, having found liability, then of course you must come up a fair, just and reasonable amount, in dollar amounts, for those injuries you find have been proven as to have been a consequence of this particular event.

"Because I believe it was Dr. Russo indicated that he thought that this disc would never naturally change by itself. You may infer, if you wish, that the plaintiff is going to be suffering, by the symptoms he described, for the remainder of his life expectancy, which at this point is 37.69 years, or as a round figure, say 38 years. And of course you must, if you find that there is a connection between the incident in question and this particular symptom and it is, in your finding, permanent, after hearing both what Dr. Russo said and what Dr. Carmada said, who said, many of these things resolve of themselves, you then would, of course, award for that particular situation and its effect upon the lifestyle of the plaintiff during that period of time."

"The standard of review of a jury instruction by a trial court is perfectly clear. We must be careful to examine the instruction in its entirety and not to isolate particular aspects for review. *Rogers* v. *Delfino,* 13 Conn. App. 725, 730, 539 A.2d 156 (1988). ' "The test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. *Borsoi* v. *Sparico,* 141 Conn. 366, 371, 106 A.2d 170 (1954). . . ." ' *Atlantic Richfield Co.* v. *Canaan Oil Co.,* 202 Conn. 234, 240, 520 A.2d 1008 (1987)." *Caccavale* v. *Hospital of St. Raphael,* supra, 511.

"That the court did not adopt the plaintiff's request verbatim does not afford a ground for reversal so long as the jury [was] adequately apprised of the relevant issues." *Cross* v. *Huttenlocher,* 185 Conn. 390, 394, 440 A.2d 952 (1981). The court did not err in refusing to charge in the exact language requested by the plaintiff as to the permanence of any disability. We have reviewed the jury instruction as given and conclude that it was sufficiently correct in law, adapted to the issues and ample to guide the jury properly in its factual determination.

## IV

The plaintiff's final claim is that as a result of the trial court's erroneous evidentiary rulings and charge to the jury, the jury's award of damages was inadequate.

The complaint alleged that the plaintiff sustained a permanent injury to his back as a result of the automobile accident. The plaintiff also claimed damages for pain and suffering, lost wages, hospital and doctors' bills, pharmaceutical supplies and damages to his car. The jury returned a verdict for the plaintiffs and

awarded $500 to Maryann Seperack for loss of consortium and awarded $25,504.65 to the plaintiff on his negligence claim. Pursuant to Practice Book § 320, the plaintiff moved to set aside the verdict based on errors in the court's evidentiary rulings, charge to the jury and the inadequacy of damages awarded by the jury. The trial court denied the motion.

The plaintiff's challenge to the adequacy of the verdict is merely a wholesale attack on the trial and a repetition of his previous claims of error on appeal. We have reviewed these claims and found no errors in the trial court's rulings and charge. We refuse to undertake a second review of these claims.

Because the plaintiff has not argued or provided this court with any other reason why the amount of damages awarded in this case "shocks the sense of justice" as to what is fair and reasonable, or that the jury was misguided in making its decision; *Zarrelli* v. *Barnum Festival Society, Inc.,* 6 Conn. App. 322, 327–28, 505 A.2d 25, cert. denied, 200 Conn. 801, 509 A.2d 516 (1986); we conclude that the trial court did not abuse its discretion in denying the plaintiff's motion to set aside the verdict.

There is no error.

In this opinion the other judges concurred.