MONTE JEFFREY SACHS *v.* DEBORAH JOY SACHS
(8094)

BORDEN, O'CONNELL and FOTI, Js.

Argued April 10—decision released July 24, 1990

*Ralph C. Crozier,* with whom, on the brief, was *Thomas F. Gudsnuk,* for the appellant (plaintiff).

*James R. Greenfield,* with whom was *Helen D. Murphy,* for the appellee (defendant).

FOTI, J. The plaintiff appeals from a judgment dissolving the parties' twenty-five month marriage. He claims that the trial court should not have (1) found jurisdiction over the parties, (2) denied several motions when the defendant had failed to comply with the plaintiff's discovery request, (3) proceeded with trial despite the fact that the defendant's financial affidavit was not filed three days in advance of trial as required by Practice Book § 463, (4) proceeded without a proper pretrial as required under "local rules," (5) accepted

testimony on the replacement value of personal property derived from hearsay documents, and (6) proceeded when the plaintiff had not been properly notified of the trial date. We affirm the judgment of the trial court.

The parties to this action were married in Woodbridge on August 31, 1986, and have no minor children issue of the marriage. The defendant owned a condominium in Cheshire at the time of the marriage. During the first six months of the marriage, the parties lived financially independent of each other. The plaintiff lived in Buffalo, New York, where he was a practicing veterinarian, and the defendant lived in her Cheshire condominium and was employed in a family corporation. After this six month period, the plaintiff moved into the defendant's condominium in Cheshire. After moving to Connecticut, the plaintiff remained unemployed for ten months and the defendant supported him.

In October, 1987, the plaintiff found employment in Florida. The defendant joined him there in January, 1988. When she arrived in Florida, the defendant purchased a home in her own name for the couple to reside in. From this point until the dissolution of their marriage, the couple pooled their salaries to cover their joint living expenses.

In September, 1988, the defendant returned to Connecticut to visit her family. While she was still in Connecticut, she was served with the plaintiff's dissolution writ. She returned to Florida to find that the plaintiff had removed several pieces of furniture, some of her personal belongings and all of her financial records and documents from her home. He had also withdrawn $9400 from the couple's joint savings account. She returned to Connecticut at the end of September with the intention of permanently remaining here, and filed an answer and cross complaint.

The defendant next filed a motion for the return of her personal property. A hearing was held on this motion and the court ordered that all of the financial documents and records be transferred into the custody of the court. In January, 1989, the plaintiff claimed the case for the trial list. On February 28, 1989, a hearing was held before the court and the parties agreed that the defendant's counsel would take custody of the financial documents being held by the court and duplicate them. It was further agreed that the parties would share the cost of duplication. In this manner, both of the parties would receive a complete set of the defendant's financial records.

Immediately after this agreement was reached, defense counsel wrote to the plaintiff's counsel confirming the agreement they had reached before the court. This letter also contained a copy of the defense counsel's letter to the clerk of the court requesting an assignment for trial that would allow a reasonable time for the plaintiff to take the defendant's deposition.

On March 7, 1989, defense counsel forwarded a second letter to the plaintiff's counsel informing him that the case had been assigned for a limited contested trial on May 3, 1989, at 2 p.m. A copy of this letter was forwarded to the clerk of the New Haven Superior Court.

Defense counsel forwarded a third letter to the plaintiff's counsel on March 15, 1989. This letter informed him that the duplicated financial documents were ready for him to pick up and that his share of the duplication cost was $176.30.

On April 5, 1989, the defendant's counsel wrote to the plaintiff's counsel a fourth time. This letter reminded him that the trial was only one month away and requested that he pick up the financial documents at his earliest possible convenience. This letter also

urged the plaintiff to set a date to take the defendant's deposition if he was still interested in doing so.

On April 15, 1989, defense counsel received $176.30 from the plaintiff for his share of the cost of the duplication of the financial documents. On April 28, 1989, the plaintiff filed a motion for extension of time in which to have the trial, and a motion to compel production of financial documents. On May 3, 1989, the day of the hearing, the plaintiff filed a motion for sanctions and a motion for a continuance. All of these motions were denied by the court on May 3, 1989. The defendant filed her financial affidavit on this same date.

After hearing evidence from both parties, the court dissolved the marriage between the parties and ordered[1] (1) that the plaintiff pay $4700 to the defendant, representing one half of the money he removed from the parties' joint savings account, at the rate of $500 per month commencing on May 15, 1989, and (2) that the plaintiff either return five specific pieces of furniture to the defendant or return the defendant's engagement ring and a bracelet. The court further ordered that if the plaintiff failed to comply with either of these orders within thirty days of the judgment, he would be obligated to pay the sum of $18,100 to the defendant within sixty days, pursuant to General Statutes § 46b-81. The plaintiff appeals from this decision.

I

The plaintiff first claims that the trial court should not have found that it had jurisdiction over the defend-

---

[1] In both its original and its corrected memorandum of decision the court has transposed the terms "plaintiff" and "defendant." Because the plaintiff failed to seek further articulation of the court's decision in accord with Practice Book § 4051, we have relied upon the trial transcript to determine the court's orders. It is the responsibility of the appellant to furnish this court with an adequate record for review. Practice Book § 4061; *Chomko* v. *Patmon,* 19 Conn. App. 483, 488, 563 A.2d 311, cert. denied, 212 Conn. 819, 565 A.2d 539 (1989).

ant because she did not meet the residency require-
ments of General Statutes § 46b-44 (c). Subsumed in
the plaintiff's claim is an assertion that the trial court
did not have jurisdiction over the marriage of the par-
ties at the time he filed his complaint because he was
then residing in Florida.

Section 46b-44 (c) provides that a "[d]ecree dissolv-
ing a marriage or granting a legal separation may be
entered if: (1) One of the parties to the marriage has
been a resident of this state for at least the twelve
months next preceding the date of the filing of the com-
plaint or next preceding the date of the decree; or
(2) one of the parties was domiciled in this state at the
time of the marriage and returned to this state with
the intention of permanently remaining before the fil-
ing of the complaint; or (3) the cause for the dissolu-
tion of the marriage arose after either party moved into
this state."

When either of the parties to a dissolution action
meets the domicile requirements of § 46b-44 (c), the
court has both personal and subject matter jurisdiction
and there is a sufficient nexus between the state and
the marriage to entitle the court's judgment to full faith
and credit. *LaBow* v. *LaBow,* 171 Conn. 433, 437, 370
A.2d 990 (1976).

The plaintiff's present assertions are in complete con-
tradiction to paragraph two of his complaint, which
reads: "The plaintiff has resided continuously in the
state of Connecticut for at least one year next [preced-
ing] the date of this complaint or dissolution." This
statement clearly satisfies the requirements of domi-
cile set forth in § 46b-44 (c) (1). Because the facts of
this case lead us to believe that the plaintiff mis-
represented his own domicile to the court, we will give
every presumption in favor of the jurisdiction of the

court. *Monroe* v. *Monroe,* 177 Conn. 173, 177, 413 A.2d 819, appeal dismissed, 444 U.S. 801, 100 S. Ct. 20, 62 L. Ed. 2d 14 (1979).

We conclude that the court gained subject matter jurisdiction over the marriage of the parties from the facts alleged in the plaintiff's complaint.[2] While any intentional misrepresentation made to the court by the parties is a serious matter; *Masters* v. *Masters,* 201 Conn. 50, 56, 513 A.2d 104 (1986); we cannot now allow the plaintiff to profit from his own misrepresentations. One who seeks to prove that he is entitled to the benefit of equity must first come before the court with clean hands. *Cohen* v. *Cohen,* 182 Conn. 193, 201, 438 A.2d 55 (1980).

## II

The plaintiff next claims that the court should not have denied his motions to compel discovery, for extension of time in which to have a trial, for sanctions for noncompliance with discovery and for a continuance. The basis of the plaintiff's claim is his assertion that he was unduly prejudiced by the defendant's failure to file financial information in response to his discovery requests.

The plaintiff filed a discovery request on October 13, 1988. The motion for disclosure contained ninety-five questions. In November, 1988, the defendant complied with the plaintiff's motion to the best of her ability. She was unable to answer twenty-six questions, however, because the information sought was in the two boxes of financial papers and documents that the plaintiff took from the Florida home. The court acquired custody of

[2] In addition, an argument can also be made that the defendant's decision to return to Connecticut and permanently remain here gave the court jurisdiction over the marriage under § 46b-44 (c) (2). The parties were married in this state and the defendant had returned before her answer and cross complaint were filed.

these records on November 17, 1988. They remained in court custody until February 28, 1989, and were available to be returned to the plaintiff on March 15, 1989, although he did not pick them up until some time after April 5, 1989. Thus, the plaintiff's claim that he was denied access to the defendant's financial papers and documents is an inaccurate portrayal of the record.

Practice Book § 218 provides that "[d]iscovery shall be permitted if the disclosure sought would be of assistance in the prosecution or defense of the action *and if it can be provided by the disclosing party or person with substantially greater facility than it could otherwise be obtained by the party seeking disclosure.*" (Emphasis added.) It is within the sound discretion of the trial court to grant or deny discovery. *Standard Tallow Corporation* v. *Jowdy,* 190 Conn. 48, 57, 459 A.2d 503 (1983); *Lewin* v. *United States Surgical Corporation,* 21 Conn. App. 629, 632 n.3, 575 A.2d 262 (1990); *DeMatteo* v. *DeMatteo,* 21 Conn. App. 582, 588, 575 A.2d 243 (1990).

Because the records in question were in the plaintiff's possession from September, 1988, to November 17, 1988, and were again available to him on March 15, 1989, he cannot now claim that the defendant had greater access to them than he, or that she could have produced them with greater facility than he.

The plaintiff further argues that he was at least entitled to updated information, presumably from September, 1988, when he took the records from the Florida condominium, to May 3, 1989, the date of the hearing. To support his claim he cites Practice Book § 232.[3]

---

[3] Practice Book § 232 provides: "If, subsequent to compliance with any request or order for discovery and prior to or during trial, a party discovers additional or new material or information previously requested and ordered subject to discovery or inspection or discovers that the prior compliance

The rules of discovery were designed to facilitate trial proceedings. *Perry* v. *Hospital of St. Raphael,* 17 Conn. App. 121, 123, 550 A.2d 645 (1988). "Although [t]he consequences of a party's failure to comply with discovery requests should fall on that party"; *Seperack* v. *Solaz,* 17 Conn. App. 684, 693, 556 A.2d 175, cert. denied, 211 Conn. 804, 559 A.2d 1138 (1989); the trial court has wide discretion when imposing sanctions on a party who fails to comply with Practice Book § 232, and that court's decision must be given great weight and every reasonable presumption of correctness. Id. The ultimate issue here is whether the court could have reasonably reached the conclusion that it did. Id.

Underlying the plaintiff's claim is his assertion that he was surprised when he learned on the day of trial that the defendant's total assets were in the neighborhood of three quarters of a million dollars. It is hard to imagine, however, that the defendant accumulated these resources between September, 1988, and May, 1989, on a salary of $38,000 per annum. As her financial affidavit shows, the defendant's principal assets are stock in her family's corporation, miscellaneous securities, a parcel of land in Florida, as well as her Cheshire condominium and her home in Florida. As we have already noted, the plaintiff lived in each of these residences during the course of the parties' marriage. It is difficult to imagine that he was surprised by their revelation on the financial affidavit. Moreover, none of the listed holdings can be classified as "new material." Neither can the defendant's failure to reveal their value while the plaintiff and then the court held her financial records be called a "knowing concealment."

was totally or partially incorrect or, though correct when made, is no longer true and the circumstances are such that a failure to amend the compliance is in substance a knowing concealment, he shall promptly notify the other party, or his attorney, and file and serve in accordance with Sec. 120 a supplemental or corrected compliance."

We conclude that the trial court did not abuse its broad discretion in denying the plaintiff's motions to compel discovery, for an extension of time, for sanctions, or for a continuance.

## III

The plaintiff next claims that the court should not have proceeded because the defendant's financial affidavit had not been filed at least three days before trial, as required by Practice Book § 463.[4] We do not agree.

The plaintiff has culled one sentence from this rule of practice and has asked us to apply it blindly. Furthermore, he has ignored the last sentence of the rule: "Notwithstanding the above, the court may render pendente lite and permanent orders, including judgment, in the absence of the opposing party's sworn statement." In view of this language, we can only conclude that the court's acceptance of a financial affidavit on the day of trial is a matter within the broad discretion of the court. Just as parties who fail to submit a financial affidavit do so at their own risk; *Baker* v. *Baker,* 166 Conn. 476, 489, 352 A.2d 277 (1974); so do those who file beyond the prescribed deadline. As noted above, when reviewing a discretionary ruling of the trial court we must decide whether the court could have rea-

[4] Practice Book § 463 provides: "At the time a motion concerning alimony, support or custody is filed, or at the time a dissolution of marriage, legal separation or annulment action is claimed for a hearing, the moving party shall file a sworn statement substantially in accordance with Form 501.1 of current income, expenses, assets and liabilities, and pertinent records of employment, gross earnings, gross wages and all other income. The opposing party shall file such sworn statements at least three days before the date of the hearing on any of the above matters. When the attorney general has appeared as a party in interest, a copy of the sworn statements shall be served upon him in accordance with Sec. 120. Unless otherwise ordered by the court, all appearing parties shall file sworn statements within thirty days prior to the date of the decree. Notwithstanding the above, the court may render pendente lite and permanent orders, including judgment, in the absence of the opposing party's sworn statement."

sonably reached the conclusion it did in light of the evidence before it. *Seperack* v. *Solaz,* supra. We conclude that the trial court did not abuse its discretion in accepting the defendant's financial affidavit on the day of trial.

## IV

The plaintiff's next claim is that the trial court should not have proceeded without a proper pretrial as required under the court's own "local rules." He asserts that the court was not entitled to set up a procedure whereby it would pretry a case and then assign it to the trial list. He further contends that the court did not follow its own "local rules," in that this case was never pretried.

It is the responsibility of the appellant to furnish this court with an adequate record for review. Practice Book § 4061; *Chomko* v. *Patmon,* 19 Conn. App. 483, 488, 563 A.2d 311, cert. denied, 212 Conn. 819, 565 A.2d 539 (1989). On the record before us it is impossible to determine whether a pretrial conference was actually held in this case. Although the defendant insists that a pretrial conference was held and points to certain agreements between the parties that were reached in the presence of the court on February 28, 1989, we cannot accurately determine whether this conference was "a pretrial session within the contemplation of Practice Book § 265." *DeMartin* v. *Yale-New Haven Hospital,* 4 Conn. App. 387, 390, 494 A.2d 1222 (1985).

Moreover, we find room within the discretionary language of Practice Book § 265[5] for the trial court to have set up the routine of pretrying domestic relations cases

---

[5] Practice Book § 265 provides in pertinent part: "The chief court administrator or the presiding judge with the consent of the chief court administrator may designate one or more available judges or state referees to hold pretrial sessions."

before assigning them to the limited contested list. "It is a proper exercise of the judicial office to suggest the expediency and practical value of adjusting differences and compromising and settling suits at law. The efficient administration of the courts is subserved by the ending of disputes without the delay and expense of a trial, and the philosophy or ideal of justice is served in the amicable solution of controversies. Our rules specifically provide for [these procedures] to be followed in pretrial sessions designed to encourage the settlement of cases." *Krattenstein* v. *G. Fox & Co.*, 155 Conn. 609, 614, 236 A.2d 466 (1967).

V

The plaintiff next claims that the trial court should not have accepted the defendant's testimony as to the replacement value of certain items of personal property. He contends that because these values were derived from hearsay documents her testimony on these matters was also impermissible hearsay.

The facts relevant to this claim are as follows. The trial court heard the defendant's testimony as to the replacement value of certain pieces of personal property that the plaintiff removed from the Florida home while the defendant was in Connecticut. The defendant stated that she had determined these amounts after correspondence with the manufacturers of the items. The only objection raised by the plaintiff during the defendant's testimony was that the defendant was not competent to testify as to the value of this personal property. This objection was properly overruled and the plaintiff declined cross-examination of the defendant. At the close of the defendant's testimony, her correspondence with the manufacturers was offered as an exhibit. At this point, the plaintiff objected, stating that the documents were impermissible hearsay. The court agreed and the plaintiff's objection was properly sustained.

A party may testify to the value of her own property. *Sunbury* v. *Sunbury,* 13 Conn. App. 651, 660, 538 A.2d 1082 (1988), rev'd on other grounds, 210 Conn. 170, 553 A.2d 612 (1989) (defendant permitted to testify as to the fair market value of the marital home). A party's testimony as to the value of personal property is proper even if no qualification other than ownership of it is shown. *Saporiti* v. *Austin A. Chambers Co.,* 134 Conn. 476, 479–80, 58 A.2d 387 (1938) (plaintiff testified as to value of furniture). Because the defendant was the owner of the personal property in question, it is inconsequential that she obtained approximate values by corresponding with manufacturers. Further, the court properly withheld the hearsay documents from evidence.

## VI

The plaintiff's final claim is that he received insufficient notice of the date this case was set down for hearing. He also asserts that he was prejudiced by this lack of notice because his principal counsel was on trial in Waterbury.

The plaintiff received no direct notice from the clerk's office of the Superior Court as to the date this case was set down for hearing. The clerk's office informed the defendant who, in turn, sent several letters to the plaintiff notifying him of the hearing date.

The final sentence of Practice Book § 270, the rule pertaining to trial assignments, provides: "The . . . clerk *shall* cause the list of [assigned] cases . . . to be prepared and distributed to *counsel and pro se parties of record.*" (Emphasis added.) In this case the clerk notified only one party, the defendant, and relied upon her to notify the plaintiff. This procedure is not in accord with the mandatory language of the rules of practice.

A finding of error here would require remedial action by this court only if the error were harmful. See *State v. Graham,* 21 Conn. App. 688, 706, 575 A.2d 1057 (1990). " 'Harmful error requires a finding that the error was likely to affect the result. . . . It is the *appellant's burden* to demonstrate the harmfulness of the error' . . . ." (Emphasis in original.) Id., quoting *Darling* v. *Waterford,* 7 Conn. App. 485, 488, 508 A.2d 839 (1986).

We conclude that while the method of notification used by the clerk's office was contrary to Practice Book § 270, it was harmless because it did not affect the outcome of the trial. The plaintiff clearly had notice of the May 3, 1988 hearing from the defendant's April 15, 1988 letter. In that letter, the defendant informed the plaintiff of the hearing date, requested $176.30 to cover duplication costs and asked that the plaintiff pick up his copies of the defendant's financial records. The plaintiff's receipt of that letter can be substantiated by the fact that the plaintiff paid the amount requested on April 28, 1989, and appeared at the hearing on May 3, 1989.

The only prejudicial effect claimed by the plaintiff of not having been notified directly by the court is that an associate tried the case rather than his primary counsel, who was in court in Waterbury at the time. He dedicates only one page of his forty page brief to this issue and cites no cases to support his claim. In light of the fact that the plaintiff has failed to meet his burden of establishing the harmfulness of the clerk's failure to notify him directly, we conclude that that failure was harmless.

The judgment is affirmed.

In this opinion the other judges concurred.