HEATHER BRUNEAU *v.* STANLEY
SEABROOK, JR., ET AL.
(AC 24400)

Lavery, C. J., and Schaller and Hennessy, Js.

Argued March 24—officially released August 24, 2004

*Terence A. Zemetis*, with whom, on the brief, was *Jane G. Beddall*, for the appellants (defendants).

*William F. Gallagher*, with whom, on the brief, were *Hugh D. Hughes*, *Brian M. Flood* and *Garrett Moore*, for the appellee (plaintiff).

*Opinion*

LAVERY, C. J. In this personal injury action, the defendants, Stanley Seabrook, Jr., and Mihaly Seabrook, appeal from the judgment of the trial court, rendered after a jury trial, in favor of the plaintiff, Heather Bruneau. On appeal, the defendants claim that the court improperly (1) admitted into evidence a certain letter pursuant to General Statutes § 52-174 (b) and (2) denied their motion for remittitur with respect to the jury's award of noneconomic damages. We affirm the judgment of the trial court.

The record discloses the following relevant facts and procedural history. On March 11, 1998, the plaintiff and Stanley Seabrook, Jr., were involved in a motor vehicle accident in Orange. By complaint filed on February 7, 2000, the plaintiff commenced this action against the defendants[1] to recover damages for personal injuries she allegedly sustained as a result of the accident. In her complaint, the plaintiff alleged that she sustained permanent injuries to her left shoulder and neck as a result of the accident, and that the accident was caused by the negligence of Stanley Seabrook, Jr. In their answer, the defendants denied the plaintiff's claims of liability and damages.

---

[1] Mihaly Seabrook owned the vehicle that Stanley Seabrook, Jr., was operating at the time of the accident.

At trial, the plaintiff sought to introduce into evidence, pursuant to § 52-174 (b),[2] all her medical records from her treating physician, Patrick A. Ruwe, including a letter dated March 27, 2001, which was written in response to a request by the plaintiff's counsel.[3] In the letter, Ruwe summarized his impression of the plaintiff's shoulder injury on the basis of his treatment of her between May 13 and August 6, 1998. Specifically, he stated in relevant part: "At my last visit I described an opinion that at some point [the plaintiff] would require surgical reconstruction of her left shoulder. In specific response to your questions, the procedure which would be required, would be an anterior capsule labral reconstruction . . . . I believe that the need for surgery is related to her accident of 3/11/98. A fairly accurate estimate of cost would be somewhere between [$12,000 to $20,000]."

The defendants objected to the admission of the Ruwe letter on the ground that it was not a medical report pursuant to § 52-174 (b). The court overruled the defendants' objection and admitted the letter into evidence. On March 5, 2003, the jury returned a verdict in favor of the plaintiff, and assessed economic damages at $70,000 and noneconomic damages at $200,000.

On March 11, 2003, the defendants filed a timely motion to set aside the verdict and for a remittitur. The sole ground asserted in the motion was that "the jury's award of economic damages was excessive in light of

[2] General Statutes § 52-174 (b) provides in relevant part: "In all actions for the recovery of damages for personal injuries . . . any party offering in evidence a signed report and bill for treatment of any treating physician . . . may have the report and bill admitted into evidence as a business entry and it shall be presumed that the signature on the report is that of the treating physician . . . and that the report and bill were made in the ordinary course of business. . . ."

[3] The letter was addressed to a paralegal, who was employed by the plaintiff's counsel, and it was responsive to questions posed by the paralegal in a previous letter.

the evidence . . . ." On May 2, 2003, the defendants filed a supplemental motion to set aside the verdict and for a remittitur, which expanded the original ground to include a claim that the court improperly admitted the Ruwe letter into evidence. The supplemental motion also requested a remittitur of the noneconomic damages in addition to the economic damages.

The court granted the defendants' motion to set aside the verdict and for a remittitur only as to the jury's award of economic damages, reducing the award by $26,600. The court denied the motion in all other respects.[4] Thereafter, the plaintiff accepted the remittitur and the defendants appealed.

I

The defendants claim that the court improperly admitted into evidence the March 27, 2001 Ruwe letter pursuant to § 52-174 (b). Specifically, they argue that the court incorrectly interpreted § 52-174 (b) as not requiring the plaintiff to establish that the Ruwe letter satisfies the requirements for a business entry to be admissible pursuant to General Statutes § 52-180.[5] We are not persuaded.

"Because this issue raises a question of statutory interpretation, our review is plenary. . . . A fundamental tenet of statutory construction is that statutes are to be considered to give effect to the apparent intention of the lawmaking body. . . . The meaning of a statute shall, in the first instance, be ascertained from the text

---

[4] In its memorandum of decision, the court stated: "[T]he motion to set aside the verdict is granted and a new trial is ordered as to the claim of economic damages only, unless the plaintiff files a remittitur in the amount of $26,600 by no later than July 9, 2003. The motion to set aside the verdict is denied in all other respects."

[5] In that regard, the defendants argue that the Ruwe letter was created solely for the purposes of litigation and that it was "neither an actual 'report and bill for treatment' of a patient, nor a business entry possessing the indicia of reliability that would allow its admission under the statute."

of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Citations omitted; internal quotation marks omitted.) *Carmel Hollow Associates Ltd. Partnership* v. *Bethlehem*, 269 Conn. 120, 129, 848 A.2d 451 (2004).

A party seeking to introduce into evidence a document pursuant to § 52-180 must show: "(1) that the document was made in the regular course of business; (2) that it was the regular course of business to make such a record; and (3) that the record was made when the act, transaction or event occurred or shortly thereafter. . . . Section 52-174 (b) . . . does not require that these three prerequisites be established." (Citation omitted; internal quotation marks omitted.) *Struckman* v. *Burns*, 205 Conn. 542, 551, 534 A.2d 888 (1987).

Our Supreme Court has set forth the requirements for a report to be admissible pursuant to § 52-174 (b). "[Section 52-174 (b)] permits a signed doctor's report to be admitted as a business entry. . . . [It] creates a presumption that the doctor's signature is genuine and that the report was made in the ordinary course of business. . . . Thus, once the statutory requirement that the report be signed by a treating physician is met, the evidence in that report is admissible and has the same effect as a business entry. . . . This statute serves the purpose of getting medical evidence before the jury in the absence of the treating physician." (Citations omitted; internal quotation marks omitted.) *Lopiano* v. *Lopiano*, 247 Conn. 356, 383, 752 A.2d 1000 (1998).

"The rationale for allowing self-authenticating documents from physicians in personal injury . . . actions

is to avoid trial delays due to the difficulty in scheduling doctors' appearances; especially because in the majority of cases the physician's testimony is consistent with his treatment report." *Seperack* v. *Solaz*, 17 Conn. App. 684, 688, 556 A.2d 175, cert. denied, 211 Conn. 804, 559 A.2d 1138 (1989).

In the present case, the court found that the Ruwe letter was a document signed by Ruwe, who was the plaintiff's treating physician, and that it was on Ruwe's letterhead. The court also found that "[t]he letter expresses Ruwe's opinion based on the treatment he rendered [to the plaintiff], and it is consistent with Ruwe's contemporaneous [medical] reports." The court therefore concluded that, pursuant to § 52-174 (b), "it was unnecessary for [the plaintiff] to lay a foundation under the business record exception . . . § 52-180, for the admissibility of the letter" and that "when viewed in the context of Ruwe's entire treatment of [the plaintiff] . . . the letter was not created for purposes of litigation nor is it unreliable."

On the basis of our examination of the record, we conclude that the court, in its thoughtful and comprehensive memorandum of decision, properly interpreted § 52-174 (b) as it applies to this case. Accordingly, the court properly admitted into evidence the March 27, 2001 Ruwe letter.[6]

II

The defendants also claim that the court improperly denied their motion for remittitur with respect to the jury's award of noneconomic damages. Specifically, they argue that the jury's award of noneconomic damages was excessive and tainted by the jury's apparent

[6] We note that General Statutes § 52-174 (b) did not prohibit either party from calling Ruwe as a witness. General Statutes § 52-174 (c); see *Seperack* v. *Solaz*, supra, 17 Conn. App. 689.

mistake in calculating its award of economic damages. We disagree.

"Litigants have a constitutional right to have factual issues resolved by the jury. . . . This right embraces the determination of damages when there is room for a reasonable difference of opinion among fair-minded persons as to the amount that should be awarded. . . . The amount of a damage award is a matter peculiarly within the province of the trier of fact, in this case, the jury. . . . The size of the verdict alone does not determine whether it is excessive. The only practical test to apply to [a] verdict is whether the award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury was influenced by partiality, prejudice, mistake or corruption." (Internal quotation marks omitted.) *Ham* v. *Greene*, 248 Conn. 508, 536, 729 A.2d 740, cert. denied, 528 U.S. 929, 120 S. Ct. 326, 145 L. Ed. 2d 254 (1999).

"A conclusion that the jury exercised merely poor judgment is an insufficient basis for ordering a remittitur. . . . Proper compensation for noneconomic damages cannot be computed by a mathematical formula, and there is no precise rule for the assessment of damages. . . . The plaintiff need not prove damages with mathematical exactitude; rather, the plaintiff must provide sufficient evidence for the trier to make a fair and reasonable estimate. . . . A generous award of noneconomic damages should be sustained if it does not shock the sense of justice." (Citations omitted.) *Johnson* v. *Chaves*, 78 Conn. App. 342, 346–47, 826 A.2d 1286, cert. denied, 266 Conn. 911, 832 A.2d 70 (2003).

"Evidence offered at trial relevant to damages must be reviewed in the light most favorable to sustaining the verdict. . . . Every reasonable presumption in favor of

the correctness of the court's refusal to set aside the verdict as excessive should be indulged . . . and its ruling will not be disturbed unless there is a clear abuse of discretion." (Internal quotation marks omitted.) *Barry* v. *Posi-Seal International, Inc.*, 40 Conn. App. 577, 582, 672 A.2d 514, cert. denied, 237 Conn. 917, 676 A.2d 1373 (1996).

In the present case, the defendants cite no authority in support of their argument that because the court ordered a remittitur with respect to the jury's award of economic damages, it also should have ordered a remittitur with respect to the jury's award of noneconomic damages. Furthermore, our review of the evidence offered at trial persuades us that the jury's award of $200,000 in noneconomic damages, although generous, nevertheless falls somewhere within the necessarily uncertain limits of fair and reasonable compensation.[7] The award certainly is not so large that it shocks our sense of justice as to compel the conclusion that the jury was influenced by partiality, prejudice, mistake or corruption. Accordingly, the court did not abuse its discretion in denying the defendants' motion for remittitur with respect to the jury's award of noneconomic damages.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[7] As the court stated in its memorandum of decision: "The jury had evidence before it that [the plaintiff's] life expectancy was an average of 57.5 years. [The plaintiff] testified that before the accident she did not limit her activities, which included cheerleading, softball, volleyball, aerobics, jet skiing and waterskiing, and since the accident she had significantly limited her activities. In addition, there was evidence that [the plaintiff's] injuries limited her in her work and that she had to make certain accommodations as a result. She also testified that she had experienced pain after the accident and also daily pain, in her neck and shoulder, for a period of approximately nine months before the trial, which affected every aspect of her life. The jury also had unchallenged medical evidence of a 5 percent permanent partial disability rating to the cervical spine . . . and a 12.5 percent permanent partial disability rating to the left shoulder . . . ."