STATE OF CONNECTICUT *v.* ANTHONY F. ADDAZIO

HOUSE, C. J., MACDONALD, BOGDANSKI, LONGO and BARBER, Js.

Argued June 4—decision released August 26, 1975

*Edward F. Hennessey,* special public defender, for the appellant (defendant).

*Richard A. Schatz,* assistant state's attorney, with whom, on the brief, was *John D. LaBelle,* state's attorney, for the appellee (state).

BARBER, J. The defendant, after a jury trial, was found guilty of selling a controlled drug in violation of 1969 Public Acts, No. 753, § 18 (b), codified as § 19-480 (b) in the 1969 Supplement to the General Statutes, and General Statutes (Rev. to 1968) § 19-452. He has appealed from the judgment.

Although the judgment was rendered in August, 1970, this appeal, due to circumstances not disclosed in the record, was not filed until September, 1974, and no finding was made before October 1, 1974. The new rules pertaining to appeals in jury cases are applicable. Practice Book § 635A, as amended. The defendant's brief raises five principal issues.

It appears from the facts stated in the briefs that evidence was offered to prove the following: On July 15, 1969, Harry Guttornsen, a student at the University of Hartford, telephoned the defendant and made arrangements for the purchase of amphetamines. He met the defendant for the first time on Vine Street in Hartford and there got into the defendant's parked Buick automobile. At the time that Guttornsen got into the automobile to make the purchase, he was empty-handed. He rode for about five minutes through several streets in the automobile with the defendant and then returned to Vine Street where he got out of the automobile. He was carrying an ordinary brown paper grocery bag. He then entered his Volkswagen automobile and drove off. The police who had observed some aspects of the encounter with the defendant started out in pursuit of Guttornsen and a high-speed chase through Hartford streets resulted. Guttornsen drove to the University of Hartford where he lost control of his automobile and crashed. At the time of the crash, Guttornsen threw a brown paper bag with its contents from his automobile into the underbrush. About five or ten minutes later, Detective Joseph Costardo of the Hartford police department recovered a brown paper bag containing two plastic bottles from the underbrush where the police saw Guttornsen throw a brown paper bag. One of the plastic bottles was opened and Detective Costardo

observed a quantity of brown and white pills in capsule form. Harry Guttornsen purchased these amphetamines from the defendant for $300. He received from the defendant the brown paper bag containing the two plastic bottles with capsules.

Detective Costardo took the brown paper bag containing the two plastic bottles to the Hartford police headquarters. He removed a capsule from one of the bottles and placed it in a white envelope. Both the white envelope with contents and the brown paper bag with contents were locked in Detective Costardo's desk at police headquarters on July 16, 1969. On July 18, 1969, Detective Costardo delivered the white envelope with contents to the state laboratory for analysis. The brown paper bag with contents remained locked in Detective Costardo's desk until March 5, 1970, when it was delivered to the state toxicological laboratory. The items delivered to the state laboratory were locked in a cabinet which was in fact a room. There were three keys to this cabinet which were held by toxicologists Abraham Stolman, Theodore J. Siek and James Garriott. There was a great quantity of evidence in this cabinet from all over the state. The three toxicologists and two other employees had access to the cabinet during the working day. The white envelope and capsule were introduced at the trial as exhibit A. The brown paper bag containing the two bottles was introduced as exhibit B. Toxicologist Siek of the state laboratory testified concerning the analysis of exhibit A and his report was introduced as exhibit D. Toxicologist Siek was permitted by the court to take capsules from exhibit B during the trial and test them. Both exhibits A and B were found by Siek to contain amphetamines.

## I

The defendant claims that the court erred in admitting into evidence, over his objection, the pills claimed to be amphetamines, and the results of an analysis of them, on the ground that the state had not offered sufficient proof of a chain of custody. Particularly he contends that there were four gaps in the chain of custody as follows: that there was a lack of proof that the brown paper bag with contents found by Detective Costardo was the bag which Guttornsen received from the defendant; that there was a lack of evidence that the capsules were the same as those received from Guttornsen; that while the capsules were at the state laboratory numerous persons had access to them; and that Siek did not test the first capsule delivered to the laboratory himself but gave it to a laboratory assistant who conducted the test.

An inference can be drawn that the brown paper bag and contents recovered by Detective Costardo was the same bag with contents sold by the defendant to Guttornsen. *State* v. *Harris,* 159 Conn. 521, 533, 271 A.2d 74, cert. dismissed, 400 U.S. 1019, 91 S. Ct. 578, 27 L. Ed. 2d 630. The state was not required to prove that it would have been impossible for the bag and contents to have been of different origin. *State* v. *Gonski,* 155 Conn. 463, 468, 232 A.2d 483; *State* v. *Tucker,* 146 Conn. 410, 414, 151 A.2d 876.

After recovery of the bag and contents by Detective Costardo, they were at all times in the custody of the police or the state laboratory. The state is not compelled to prove each and every circumstance in the chain of custody beyond a reasonable doubt.

*State* v. *Jones,* 167 Conn. 228, 239, 355 A.2d 95; *State* v. *Johnson,* 166 Conn. 439, 443, 352 A.2d 294; *State* v. *Hall,* 165 Conn. 599, 605, 345 A.2d 17. "There is no hard and fast rule that the prosecution must exclude or disprove all possibility that the article or substance has been tampered with; in each case the trial court must satisfy itself in reasonable probability that the substance had not been changed in important respects." *State* v. *Johnson,* 162 Conn. 215, 232, 292 A.2d 903. "The ruling of the trial judge may not be overturned except for a clear abuse of discretion." *State* v. *Brown,* 163 Conn. 52, 57, 301 A.2d 547. Siek personally opened the envelope containing the single capsule and was present when a chemical analysis was conducted on the capsule. The analysis was made under his direction. This delegation of duty is proper and is authorized by § 19-483 (b) of the General Statutes.

There were no improper gaps in the chain of custody. The admission into evidence of the pills and of the results of the analyses performed upon them was proper.

## II

Toxicologist Siek testified as to the results of the analysis of the pill introduced as exhibit A. The state then requested permission to have him analyze some of the pills contained in the bottles introduced as exhibit B. The court overruled the defendant's objection to this motion. After testing the pills Siek was recalled and was asked: "[W]hat are the results of the eight capsules which you made yesterday?" The defendant objected on the ground that "the statute requires that an original written report be submitted and Section . . . [20 (b) of 1969 Public Acts, No. 753] requires that he file a

report." The objection was overruled and an exception was taken. Thereafter Siek testified that the results of his tests revealed the presence of amphetamines. The record does not show that the defendant made any request to have a toxicologist of his own choosing make an examination of the pills. See *State* v. *Clemons*, 168 Conn. 395, 402, 363 A.2d 33.

Section 19-483[1] of the General Statutes became effective July 1, 1969. It has been subsequently amended by 1971 Public Acts No. 164, Public Act

[1] "[General Statutes] Sec. 19-483. ANALYSIS OF BLOOD OR URINE FOR PRESENCE OF CONTROLLED DRUGS OR ALCOHOL. STANDARDS. . . . (a) The chief toxicologist of the state department of health shall have primary responsibility for analysis of materials believed to contain controlled drugs, or of blood or urine believed to contain alcohol, for purposes of criminal prosecutions pursuant to this chapter; provided nothing herein shall be construed to preclude the use for such analyses of the services of other qualified toxicologists, pathologists and chemists, whether employed by the state or a municipality or a private facility or engaged in private practice, if such toxicologists, pathologists and chemists are engaged in operation of or employed by laboratories licensed by the commissioner of health pursuant to section 19-453. (b) The chief toxicologist shall establish the standards for analytical tests to be conducted with respect to controlled drugs, or with respect to blood or urine believed to contain alcohol, by qualified professional toxicologists and chemists operating at his direction and shall have the general responsibility for supervising such analytical personnel in the performance of such tests. The original report of an analysis made by such analytical personnel of the state department of health shall be signed and dated by the analyst actually conducting the test and shall state the nature of the analytical test or procedure, the identification and number of samples tested and the results of each analytical test. Such report shall be available to counsel for the defendant upon request and shall be received in any court of this state as competent evidence of the matters and facts therein contained upon introduction through the testimony of any toxicologist of the state department of health as to the nature of the tests performed, the controls employed to ensure the accuracy of the test results and the competence of any analyst of the state department of health performing such test at his direction and under his supervision. . . ."

No. 73-681 § 18, and Public Act No. 74-186 § 6. Part (a) of the statute makes clear that it is primarily directed at the chief toxicologist of the state and does not preclude the use of the services of other qualified toxicologists. Part (b) requires the original report of an analysis made by analytical personnel of the state department of health to be signed by the analyst who actually conducts the test. It states further that such report shall be received in any court as competent evidence upon introduction through the testimony of any toxicologist of the state department of health.

The clear language of § 19-483, taken as a whole, as it read at the time of the trial indicates an intent to make a written report admissible in lieu of the testimony of the analyst when there has been a compliance with the requirements set forth in the statute. The statute nowhere indicates that the report must be admitted into evidence. The legislature clearly expressed what it obviously intended. *United Aircraft Corporation* v. *Fusari,* 163 Conn. 401, 411, 311 A.2d 65; see *Kellems* v. *Brown,* 163 Conn. 478, 505, 313 A.2d 53. The statute merely provides a refinement of the long-established exception to the hearsay rule permitting the introduction of public records as exhibits. See *State* v. *Johnson,* 166 Conn. 439, 443, 352 A.2d 294; *Hing Wan Wong* v. *Liquor Control Commission,* 160 Conn. 1, 8, 273 A.2d 709, cert. denied, 401 U.S. 938, 91 S. Ct. 931, 28 L. Ed. 2d 218. Ordinarily the objection is made when a report is allowed into evidence on the ground that there is no opportunity for cross-examination. *State* v. *Johnson,* supra; see *State* v. *Marsh,* 168 Conn. 520, 530, 362 A.2d 523. In this case, the toxicologist who made the analysis was subject to cross-examination.

Because the defendant objected solely on the basis that the report was not submitted to the court, and since this is not required under the statute, we find no error in the ruling of the court permitting toxicologist Siek to testify as to the results of his analysis. "This court is not bound to consider claims of law not made at the trial. *Harry* v. *Bidwell,* 149 Conn. 93, 98, 175 A.2d 704. This rule applies to criminal as well as civil cases. *State* v. *Sul,* 146 Conn. 78, 81, 147 A.2d 686." *State* v. *Taylor,* 153 Conn. 72, 86, 214 A.2d 362, cert. denied, 384 U.S. 921, 86 S. Ct. 1372, 16 L. Ed. 2d 442. The objection which the defendant made at the trial failed to state distinctly the grounds now claimed and cannot be said to have apprised the trial court of the ground that the defendant is now for the first time asserting on appeal. Error cannot be predicated on such ground. *Prystash* v. *Best Medium Publishing Co.,* 157 Conn. 507, 513, 254 A.2d 872.

### III

During the testimony of toxicologist Siek he stated that the tests done on one of the pills turned over to him for analysis did not determine the strength of or quantity of amphetamine in the capsule tested.

The defendant made the claim that in order to prove a violation of the statutes the state was required to prove that the controlled drug would have a stimulating effect on the user. As the defendant points out in his brief, Toxicologist Siek analyzed at least nine capsules from exhibits A and B and the analysis indicated that all contained amphetamine and that the tests were employed to detect a reasonably high level of amphetamine. Section 19-480 (b) of the General Statutes makes

the sale of "any controlled drug," except as authorized, a violation of the statutes. Controlled drugs are classified as "amphetamine-type . . . and other stimulant and depressant drugs." Alcohol, nicotine and caffeine are specifically excluded. General Statutes § 19-443 (6).

Our statutes require that the state prove no more than that the substance sold contained amphetamine in such amount as would give a positive test. See 28 C.J.S., Drugs & Narcotics Supplement, § 203. The intent of the statute is clear that any such amount will suffice to support a conviction. *Glover* v. *State,* 14 Md. App. 454, 463, 287 A.2d 333. The court was well within its discretion in sustaining the state's objection to the questioning of the witness concerning the stimulating effects of one pill.

## IV

The defendant called a witness who testified that he had confronted one of the state's witnesses, who had testified at the trial. He was asked: "And what did he say to you with reference to why he used your name?" The state objected on the ground that the question called for hearsay. The defendant replied: "I think prior inconsistent statements . . ."; and the state countered: "There is no showing of any inconsistent statements." Thereupon the court sustained the objection and the defendant took an exception.

The question asked would have permitted the unqualified admission of hearsay evidence. Evidence of a witness' material inconsistent statement, either by cross-examination or extrinsic evidence, is admissible for the purpose of attacking a witness' credi-

bility. *State* v. *Vega,* 163 Conn. 304, 307, 306 A.2d 855; *State* v. *Keating,* 151 Conn. 592, 597, 200 A.2d 724, cert. denied, sub nom. *Joseph* v. *Connecticut,* 379 U.S. 963, 85 S. Ct. 654, 13 L. Ed. 2d 557; 3A Wigmore (Chadbourn Rev.) § 1018. The defendant, however, failed to frame a proper question which would have specifically elicited such evidence. Under the circumstances the court did not err in sustaining an objection to the question as being improperly put for the purpose of contradicting a witness by extrinsic evidence. *State* v. *Main,* 75 Conn. 55, 63, 52 A. 257; see *State* v. *Saia,* 167 Conn. 286, 291, 355 A.2d 88.

## V

Finally the defendant claims error in permitting the state to offer certain rebuttal evidence on the ground that it was outside the scope of the defense testimony. On direct examination the defendant testified that on two occasions he went to Jack's Pharmacy to transact business. On cross-examination he admitted that he learned from the proprietor that approximately two thousand pills were stolen from Jack's Pharmacy prior to July 16, 1969. In rebuttal the state called an employee of the department of consumer protection and inquired: "[D]id you investigate at any time a violation of regulations pertaining to controlled drugs at Jack's Pharmacy in the City of Hartford?" The defendant objected on the ground that he did not bring in any evidence in his testimony in chief concerning Jack's Pharmacy. The objection was overruled and the defendant took an exception. The witness' answer was in the affirmative. Thereafter, although the state attempted to trace the exhibits in this case to Jack's Pharmacy, the attempt was

unproductive. The court consistently sustained objections to and ordered stricken testimony offered by the state through this witness on other grounds.

Unless the court in its discretion permits it, the state is not permitted on rebuttal to present witnesses who merely support the state's case, but is confined to testimony which is directed at refuting the evidence given by the defendant. *State* v. *Buonomo,* 88 Conn. 177, 183, 90 A. 225; 75 Am. Jur. 2d, Trial, § 159. See *Hathaway* v. *Hemingway,* 20 Conn. 191, 195; McCormick, Evidence (2d Ed.) § 4. The court may also, in its discretion, permit the opening of a criminal case for the introduction of further evidence. *State* v. *Watson,* 165 Conn. 577, 594, 345 A.2d 532; *State* v. *Lenihan,* 151 Conn. 552, 556, 200 A.2d 476. Assuming that the defendant had properly made a claim before the trial court on the ground of improper rebuttal, the ruling of the court to which proper exception was taken was within the court's discretion. *State* v. *Leopold,* 110 Conn. 55, 67, 147 A. 118.

The defendant has not sustained his burden of establishing harmful material error in any ruling by the court pertaining to the rebuttal witness called by the state to which proper objection was made and exception taken. Practice Book § 226; *State* v. *Hawkins,* 162 Conn. 514, 516, 294 A.2d 584, cert. denied, 409 U.S. 984, 93 S. Ct. 332, 34 L. Ed. 2d 249; *State* v. *Manning,* 162 Conn. 112, 119, 291 A.2d 750. The initial question to which objection was made and exception taken was preliminary. The objection stated for the record was not properly articulated to inform the court of the precise nature of the defendant's objection. The claim in the defendant's brief that the line of inquiry was to degrade

428

the defendant and prejudice the jury was not made at the time of trial. The defendant, not having made this claim to the trial court, cannot take advantage of such claim in this court. *State* v. *Johnson,* 166 Conn. 439, 444, 352 A.2d 294; *State* v. *Taylor,* supra.

There is no error.

In this opinion the other judges concurred.