STATE OF CONNECTICUT *v.* MICHAEL WATKINS
(5802)

SPALLONE, DALY and NORCOTT, Js.

Argued January 12—decision released April 5, 1988

*Peter A. Kelly,* for the appellant (defendant).

*Judith Rossi,* deputy assistant state's attorney, with whom, on the brief, was *Roland Fasano,* assistant state's attorney, for the appellee (state).

SPALLONE, J. The defendant appeals from the judgment of conviction, after a jury trial, of two counts of robbery in the first degree; General Statutes § 53a-134 (a) (2); burglary in the first degree; General Statutes § 53a-101 (a) (2); and possession of a sawed-off shotgun. General Statutes § 53a-211.

The defendant claims the trial court erred (1) in refusing to permit the defendant to introduce evidence that

a third party committed the robbery with which he was charged, (2) in upholding potential defense witnesses' claims of privilege against self-incrimination, and failing to grant immunity to these witnesses in order to compel them to testify, (3) in refusing to admit, as a declaration against penal interest, the statement given to the police by a non-available witness, (4) in refusing to instruct the jury in accordance with the definition of "possession" suggested by the defendant in his request to charge, (5) in denying the defendant's motion in limine regarding rebuttal evidence intended to impeach the credibility of a defense witness, and (6) in denying the defendant's motion to suppress his out-of-court identification on the ground of an impermissibly suggestive photo array. We find no error.

Evidence was elicited during the trial which would support the jury's finding of the following facts. At approximately 6 a.m. on November 14, 1985, Alberto Rodriguez (Alberto) and his girlfriend were occupying a bedroom at the rear of a New Haven apartment he shared with his cotenant, Josue Rodriguez (Josh) who, at that time, was in a front bedroom with his girlfriend, Stephanie Benjamin. Josh and his companion were awakened by the sound of the door to the hallway being kicked in. Immediately thereafter, three black males burst into the bedroom. One of the intruders, later identified as the defendant, stood over the couple holding a sawed-off shotgun and ordered Josh to lie on his stomach and to turn his head away. The intruder held the shotgun against the back of Josh's head. Benjamin remained immobile, and was able to observe the defendant, who was unmasked.

Meanwhile, the second and third perpetrators passed through Josh's bedroom, through the living room and then kicked or pushed open the door into Alberto's bedroom. The room was unlit, so neither Alberto nor his girlfriend could identify the two men. Alberto leaped

from his bed and struggled with one of the intruders. During the tussle, the intruder fired a shot, wounding Alberto in his upper right arm. The two intruders then took jewelry and some cash from Alberto's dresser and returned to Josh's room, where the defendant was still wielding the shotgun. The intruders took jewelry from Josh's dresser and then fled the apartment. Soon after, a car was heard being driven away.

At approximately 1 p.m. on that same day, November 14, 1985, Katherine Wright, who lived at 17 Dickerman Street, reported to the police that a young black male had just fired a shotgun in a neighboring yard and had then walked out of the yard onto Dickerman Street, with the shotgun slung over his shoulder. When police arrived on Dickerman Street, they encountered the young man, later identified as the defendant, and three or four other men standing near a light colored Ford Pinto. In the back seat of the car was a partially open blue gym bag, containing a sawed-off shotgun with a shoulder strap. In the yard behind 18 Dickerman Street, the police found a small pouch containing three unspent .14 gauge shotgun shells. Wright identified the defendant as the man who had fired the shotgun. At first, the defendant denied any involvement, but he later admitted having fired the weapon. The defendant was arrested for possession of a sawed-off shotgun.

Detective Leroy Dease, who was investigating the Rodriguez robbery, noticed that the defendant fit the description of the intruder given by Stephanie Benjamin. Dease then compiled a photo array consisting of eleven black and white photographs, including one of the defendant. On the afternoon of November 15, 1985, Dease showed the array to Benjamin who picked out the defendant's photo and stated that she was "95 percent sure" that he was the intruder she saw. Benjamin had previously told the police that, although she

recognized the defendant as someone she had seen before in a local bar, she did not know his name. Benjamin was also shown the shotgun taken from the Pinto and she responded that it was similar to the one held by the defendant at the time of the robbery. Thereafter, on December 5, 1985, Benjamin was escorted by the police to the courthouse where the defendant was being arraigned on the shotgun charge. She looked into a crowded courtroom and made a positive identification of the defendant as the intruder armed with the sawed-off shotgun. During the trial, she also made an in-court identification of the defendant.

The defendant was tried before a jury and found guilty of the four crimes with which he was charged. The defendant now appeals his convictions to this court.

I

In his first claim, the defendant contends that the court committed error in excluding evidence proffered by the defendant that third parties could have committed the crime.

During the course of the trial, the defendant, in an offer of proof outside the presence of the jury, presented the testimony of three men as potentially exculpatory evidence. The first, Philip Parker, stated that he was serving a prison sentence for a street robbery he committed on December 19, 1985. When asked if he had used a shotgun in that robbery, he invoked his privilege against self-incrimination because he had not been convicted of possession of a shotgun in that case. He also denied any knowledge of the robbery at the Rodriguez apartment.

The defendant next offered the testimony of Ricardo Maldonado, who was serving a prison sentence for the same December 19, 1985 street robbery. Maldonado testified that Parker had indeed been armed with a

sawed-off shotgun at the time of the street crime. He further testified that he and Parker took jewelry and a fur coat from their victim and brought the items to one William Greene, who had also been convicted with Parker and Maldonado. Maldonado testified that he was not in New Haven on November 14, 1985, and that he knew nothing of the Rodriguez robbery.

William Greene also testified during the offer of proof. He stated that he was currently incarcerated for his part in the December 19, 1985 street robbery, but denied any knowledge of the Rodriguez robbery. When asked if, while incarcerated at the Whalley Avenue jail, he had spoken to the defendant, he invoked his privilege against self-incrimination.

The defendant then proffered his own testimony that he had met William Greene at the Whalley Avenue jail and had told Greene about the charges pending against him for the Rodriguez robbery. According to the defendant, Greene said he had an idea who committed the crime because "the person" had come to him with "gold and drugs."

On the basis of testimony proffered, defense counsel requested that the prosecutor grant immunity to William Greene "so that we could get his testimony with respect to whatever conversations that he had with Michael Watkins in the jail." The prosecutor refused to grant immunity to Greene. The court, noting that the crimes were dissimilar and that the claim regarding exculpatory evidence was purely speculative, stated that it saw no basis for the state to grant immunity or for the jury to hear any of the proffered testimony. The defendant excepted to this ruling.

There is no merit to the defendant's claim that the court erred by not accepting this testimony. On the basis of the facts and circumstances of this case, the court was justified in excluding the proffered evidence

as speculative and irrelevant. The trial court has broad discretion in determining the relevancy of proffered evidence, and a ruling excluding evidence as irrelevant will not be disturbed absent a showing of an abuse of discretion. *State* v. *Franko,* 199 Conn. 481, 487–88, 508 A.2d 22 (1986).

We note that none of the proffered testimony directly connected any of the third parties to the crime committed at the Rodriguez apartment. *State* v. *Kinsey,* 173 Conn. 344, 348, 377 A.2d 1095 (1977); *State* v. *Perelli,* 125 Conn. 321, 328, 5 A.2d 705 (1939). Neither was that testimony sufficient to indicate that a "signature" type crime spree had occurred which would indicate the culpability of persons other than the defendant. See, e.g., *State* v. *Morowitz,* 200 Conn. 440, 442, 512 A.2d 175 (1986); *State* v. *Mandrell,* 199 Conn. 146, 152, 506 A.2d 100 (1986); *State* v. *Carsetti,* 12 Conn. App. 375, 380–81, 520 A.2d (1987). " '[I]t is within the sound discretion of the trial court to refuse to admit such evidence when it simply affords a possible ground of possible suspicion against another person.' " *State* v. *Giguere,* 184 Conn. 400, 405, 439 A.2d 1040 (1981), quoting *State* v. *Renteria,* 21 Ariz. App. 403, 404, 520 P.2d 316 (1974). We can find no fault with the trial court's proper exercise of its discretion.

## II

The defendant's second claim of error is closely related to his first. In essence, he asserts that the court, after hearing the testimony of Parker, Maldonado and Greene during the offer of proof, should have given "a judicial grant of immunity" to any or all of these potential witnesses and thereby compel them to testify. Our short response to such a claim is that our courts have no authority to grant such immunity. See *State* v. *McIver,* 201 Conn. 559, 567, 518 A.2d 1368 (1986); *State* v. *McLucas,* 172 Conn. 542, 561, 375 A.2d 1014, cert.

denied, 434 U.S. 855, 98 S. Ct. 174, 54 L. Ed. 2d 126 (1977); *State* v. *Simms,* 170 Conn. 206, 210–11, 365 A.2d 821, cert. denied, 425 U.S. 954, 96 S. Ct. 1732, 48 L. Ed. 2d 199 (1976). Furthermore, even if we were to find that our courts do have the ability to grant judicial immunity, the defendant did not properly raise the issue in the trial court. The defendant specifically requested that the prosecution offer immunity to Greene; at no time did the defendant request that the court itself consider granting immunity. Claims raised for the first time on appeal will not be considered. Practice Book § 4185; see also *Tucker* v. *Alleyne,* 195 Conn. 399, 402 n.3, 488 A.2d 452 (1985); *State* v. *Evans,* 165 Conn. 61, 69–70, 327 A.2d 576 (1973). The defendant has raised no exceptional circumstances to warrant a departure from this general rule and the record does not adequately support a claim that the defendant has been deprived of a fundamental right or a fair trial. Thus, we will not review this claim.

### III

As his third claim, the defendant argues that the trial court committed error in refusing to admit, as a declaration against penal interest, the six page, written statement of Frank Hawley, Jr. Hawley, the owner of the Pinto in which the sawed-off shotgun was found, had given the statement to the police hours after the defendant had been arrested. Our review of the statement in question reveals that it was not a statement against the penal interest of Hawley, but was in fact a statement in which he denied having knowledge of the shotgun being in his car. The statement was exculpatory in nature, and could not conceivably be considered as against the penal interest of the declarant. See, e.g., *State* v. *Hernandez,* 204 Conn. 377, 392 n.8, 528 A.2d 794 (1987); *State* v. *DeFreitas,* 179 Conn. 431, 447 n.6, 426 A.2d 799 (1980). There is no merit to this claim.

## IV

The defendant also claims error in the trial court's refusal to charge the jury on the element of possession in accordance with the definition included in the defendant's requested jury instructions. The defendant was charged with violating General Statutes § 53a-211, which prohibits possession of a sawed-off shotgun. The defendant was specifically charged with possession of the shotgun at the Dickerman Street address where he admitted that he had held, carried, loaded, fired and controlled the weapon. In a request to charge, the defendant asked that the court instruct the jury that possession be defined as connoting "that such property is held by the possessor for a substantial period of time, either as owner of the property or as proprietor of a qualified right in it." The requested definition is not a correct statement of the law and, therefore, the trial court was not obligated to give it. *State* v. *Pollitt,* 205 Conn. 61, 84, 530 A.2d 155 (1987); *State* v. *Chetcuti,* 173 Conn. 165, 170–71, 377 A.2d 263 (1977). The element of possession, as used in our criminal statutes, is expressly defined in General Statutes § 53a-3 (2), where it states: " 'possess' means to have physical possession or otherwise to exercise dominion or control over tangible property." The trial court correctly instructed the jury on the statutory definition of "possess," and emphasized that the state was required to prove possession beyond a reasonable doubt. The charge as given in this case was a correct statement of the law and was sufficient to guide the jury in its determination as to whether the state sustained its burden of proving the element of possession. See *State* v. *Hill,* 201 Conn. 505, 514–15, 518 A.2d 388 (1986). The trial court did not err in refusing the defendant's requested definition.

## V

The defendant next claims that the trial court committed reversible error when it denied his motion in limine

regarding rebuttal testimony offered to impeach the testimony of the defendant's sister. The trial court denied the defendant's motion in limine and permitted the state to call two police officers as witnesses to refute the testimony of the defendant's sister, his alibi witness, that she had given the police a statement sometime after her brother's arrest. That this rebuttal testimony was relevant is readily apparent; it directly contradicts the testimony given by the witness. When presenting rebuttal evidence, the state is "confined to testimony which is directed at refuting the evidence given by the defendant"; *State* v. *Addazio,* 169 Conn. 416, 427, 363 A.2d 153 (1975); or is "in general contradiction of testimony given by the defendant." *State* v. *Fine,* 159 Conn. 296, 301, 268 A.2d 649 (1970). The admission of rebuttal evidence is ordinarily within the sound discretion of the trial court. See, e.g., *State* v. *Lisella,* 187 Conn. 335, 337, 445 A.2d 922 (1982); *State* v. *Nims,* 180 Conn. 589, 599, 430 A.2d 1306 (1980); *State* v. *Palozie,* 165 Conn. 288, 299, 334 A.2d 468 (1973); *State* v. *Leopold,* 110 Conn. 55, 67, 147 A. 118 (1929). We find nothing in the court's ruling on this issue to support the defendant's claim of error.

## VI

Finally, the defendant claims error in the trial court's denial of his motion to suppress the identification made by Stephanie Benjamin on the ground that the photo identification procedure was so impermissibly suggestive as to render her out-of-court and in-court identifications unreliable. Our review of the record reveals that this claim is unsupported and that the procedures were neither impermissibly suggestive nor unreliable. See, e.g., *Manson* v. *Brathwaite,* 432 U.S. 98, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977); *Neil* v. *Biggers,* 409 U.S. 188, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972). See also *State* v. *Mayette,* 204 Conn. 571, 581–84, 529 A.2d 673 (1987);

*State* v. *Williams,* 203 Conn. 159, 172–78, 523 A.2d 1284 (1987); *State* v. *McKnight,* 191 Conn. 564, 569–74, 469 A.2d 397 (1983).

We hold that the trial court acted appropriately and in accordance with applicable law with respect to the defendant's claims of error.

There is no error.

In this opinion the other judges concurred.