BASMA SHAHAM *v.* JOHN CAPPARELLI ET AL.
(8499)

SPALLONE, FOTI and CRETELLA, Js.

Argued September 13—decision released November 6, 1990

*Neil W. Sutton,* for the appellant (plaintiff).

*Raymond J. Plouffe, Jr.,* for the appellees (defendants).

FOTI, J. The plaintiff, Basma Shaham, appeals from the judgment of the trial court that awarded her $11,300 from the defendants, John Capparelli and

Robert Mendola,[1] after a jury trial. The plaintiff challenges three of the trial court's rulings: (1) excluding certain evidence that was offered in rebuttal; (2) giving a jury instruction on adverse inference; and (3) denying the plaintiff's motions to set aside the verdict and for additur. We affirm the judgment of the trial court.

The jury could have reasonably found the following facts. On January 20, 1983, while inspecting the defendants' vacant premises, the plaintiff fell on ice that had formed in a hallway and injured her back. She went to her family physician, who referred her to an orthopedic surgeon, who in turn referred her to a neurologist for a consultation. After a second visit with the original orthopedic surgeon, she began treatment with a second orthopedic surgeon, Eric Garver, whose office was located closer to the plaintiff's home. Garver referred her to a radiologist and to a second neurologist, who ordered tests, including an electromyogram, that were performed by yet another physician. Following this neurological consultation, Garver suggested that the plaintiff undergo surgery, so she sought a second opinion from a third orthopedic surgeon. Finally, in the following year, 1987, she was referred to a neurosurgeon by Garver. The neurosurgeon performed a complete examination of the plaintiff, but did not do any surgery. Five years after her fall, she injured her back in a subsequent fall. Garver treated her for this injury, eventually recommending a total excision of one of her discs.

The plaintiff's medical bills for the first fall totaled $3203. Garver was the only medical witness at the trial. He testified that the plaintiff had a "significant" disc protrusion, and assessed a 10 percent permanent par-

---

[1] Robert Picheco also was named as a defendant in this action. The complaint was withdrawn as to him before trial. For the purpose of this opinion, defendants refers only to Capparelli and Mendola.

tial disability to her lower back resulting from the 1983 fall. He further testified that the second fall did not change this disability, but he conceded that his assessment could be affected if the history he obtained from the plaintiff was either inaccurate or incomplete.

The record shows that certain relevant facts were not included in this history. First, after her fall in 1983, the plaintiff applied for a job as a machine operator, denying any disability. She obtained this full-time position, which required repetitive heavy lifting, bending and standing. She worked forty hours per week, and even put in occasional overtime. Second, Garver was not apprised of the plaintiff's postfall pregnancies, nor of any back pain that may have resulted from these pregnancies.

The plaintiff's first claim is that the trial court abused its discretion by refusing to permit certain testimony to be offered in rebuttal. There are several additional facts that are relevant to this issue. At trial, the plaintiff was questioned about her 1987 federal income tax return and a 1988 W-2 form from an alleged employer, the American Steak House. She explained on three occasions during the trial that it was her children who had worked at the steak house, and that the tax documents were prepared in her name so she could gain control over her children's income. After both parties rested, the plaintiff called the owner of the American Steak House as a rebuttal witness. The plaintiff sought to show through the owner's testimony that she never had worked at his restaurant. The court disallowed this testimony, ruling that it was not proper rebuttal, and that it was cumulative.[2]

[2] The following exchange took place:

"The Court: Each party is entitled to call whatever witness they want as rebuttal. I don't know what he's going to ask. He doesn't have to lay a foundation for rebuttal witness at all. He has to wait until the evidence

The admission of rebuttal evidence is ordinarily within the sound discretion of the trial court. *State* v. *Watkins*, 14 Conn. App. 67, 76, 540 A.2d 76, cert. denied, 208 Conn. 804, 545 A.2d 1102 (1988). "When

comes in, hear what the evidence is in, whatever the evidence says, and then he can call whatever person he wants to rebut that testimony.

"Mr. Plouffe: But as I understand it, Your Honor, before the rebuttal witness can testify, there has to be a foundation that indeed there was something new or a surprise that came out in the testimony before this man can be called to testify. If he's going to testify as to something Mr. Sutton knew before someone testified, then I think that that requirement is not met.

"The Court: The rebuttal witness, as I understand—sit down, gentlemen, sit down—is when you call a witness who has already testified and has said something, then you can call that witness back to show that the other witness was, in fact, not telling the truth or will rebut it and so on. Now, you're bringing another witness in and you wish to have him rebut the testimony of one of the witnesses. Is that correct?

"Mr. Sutton: That is correct, Your Honor.

"The Court: All right. Now, what kind of a foundation do you claim, Mr. Plouffe, has to be laid for a rebuttal witness? I know of no rule that requires a foundation.

"Mr. Sutton: Your Honor, actually, I should clarify. It's not—he's not to rebut any witness other than my client and the testimony that just came out. But I think that is appropriate grounds for rebuttal. It's the question of the W-2 has just come out, and it was relatively unexpected. And since the W-2 didn't come out in my direct case, the only way I can rebut it is at this stage of the trial.

"The Court: This is what he's going to testify to?

"Mr. Sutton: As to whether or not she worked at American Steak in 1988.

"The Court: Well, that's not a rebuttal witness. That is not a rebuttal witness, sir. That is a substantiating, corroborative witness of what your client has already indicated. That is far from a rebuttal witness.

"Mr. Sutton: Your Honor, may I not rebut the implications or the inference—

"The Court: Oh, absolutely not.

"Mr. Sutton: —from a document?

"The Court: That is stacking. That is absolutely stacking testimony that is confirming, that's corroborative and so on. It is not rebutting the testimony of somebody else.

"Mr. Sutton: But, Your Honor, I believe it is rebutting evidence that the defense has put forward.

"The Court: You're entitled to believe that. I'm saying to you that that is not the understanding of the court and I'm not going to permit that to come in, otherwise we can just corroborate more testimony that has been

presenting rebuttal evidence, the [plaintiff] is 'confined to testimony which is directed at refuting the evidence given by the defendant'; *State* v. *Addazio,* 169 Conn. 416, 427, 363 A.2d 153 (1975); or is 'in general contradiction of testimony given by the defendant.' *State* v. *Fine,* 159 Conn. 296, 301, 268 A.2d 649 (1970)." *State* v. *Watkins,* supra.

The plaintiff claims that the proposed testimony serves to refute the defendants' evidence and to rehabilitate a witness, the plaintiff. She claims that in order to accomplish such rehabilitation she was entitled to produce independent evidence to corroborate her explanation of the presence of her name on the W-2 form and the tax return.[3]

Contrary to the plaintiff's assertions, the record does not support her claim that the testimony was rebuttal testimony and that the court abused its discretion by excluding it. The testimony does not fit the definition of rebuttal testimony. It would have neither refuted evidence given by the defendants nor contradicted such evidence. It would merely have corroborated what the plaintiff had already testified to and would have been cumulative in nature. See *Verrastro* v. *Middlesex Ins. Co.,* 207 Conn. 179, 187–88, 540 A.2d 693 (1988). As

given throughout this trial. That is not a rebutting witness, sir. That is not what the rule is. All you're doing is corroborating what this witness, something that your witness has already said.

"Mr. Sutton: And, in fact, rebutting the implication from a W-2 and from the questions of counsel.

"The Court: It may be. That may be so. But it's not a rebuttal witness, as I understand the term, sir."

[3] The defendants argue that even if this was rebuttal evidence and the court should have allowed the testimony of the owner of the American Steak House, the ruling was harmless since the plaintiff prevailed on the issue of liability. They argue that the owner's testimony was not offered as to the issue of damages, and, further that, had such testimony been allowed, confirming that the plaintiff had not worked at the restaurant, such evidence would have shown that she misrepresented material tax matters to the government.

cumulative evidence, it was within the trial court's discretion to exclude it. *State* v. *Watley,* 195 Conn. 485, 490, 488 A.2d 1245 (1985); *State* v. *Gooch,* 186 Conn. 17, 24, 438 A.2d 867 (1982).

The plaintiff's second claim is that the trial court improperly charged the jury that it could draw an adverse inference from the plaintiff's failure to call eight of her treating physicians whose reports were in evidence. The trial court may charge a jury as to an adverse inference under *Secondino* v. *New Haven Gas Co.,* 147 Conn. 672, 675, 165 A.2d 598 (1960). The *Secondino* rule is well established and permits a jury to draw the adverse inference that the failure of a party to produce a witness implies that the witness, if called, would have exposed facts unfavorable to the party's cause. Id.; *Canton Motorcar Works Inc.* v. *DiMartino,* 6 Conn. App. 447, 460, 505 A.2d 1255, cert. denied, 200 Conn. 802, 509 A.2d 516 (1986). In order to draw this inference the jury must first find (1) that the witness was available, and (2) that the witness was one the party would naturally produce. *Secondino* v. *New Haven Gas Co.,* supra; *Grabowski* v. *Fruehauf Trailer Corporation,* 2 Conn. App. 167, 170, 477 A.2d 685 (1984). "The party claiming the benefit of the rule . . . must show he is entitled to it." *Queen* v. *Gagliola,* 162 Conn. 164, 169, 292 A.2d 890 (1972); *Nichols* v. *Coppola Motors, Inc.,* 178 Conn. 335, 340–41, 422 A.2d 260 (1979); *Grabowski* v. *Fruehauf Trailer Corporation,* supra.

In *Seperack* v. *Solaz,* 17 Conn. App. 684, 686–92, 556 A.2d 175, cert. denied, 211 Conn. 804, 559 A.2d 1138 (1989), this court affirmed a defendant's use of a *Secondino* charge as a proper method of challenging a plaintiff's medical evidence despite the introduction of that evidence in the form of medical reports pursuant to

General Statutes § 52-174 (b).[4] We decided that an adverse inference instruction was proper under the circumstances of *Seperack;* we must consider the circumstances in this case to determine whether the adverse inference instruction was proper.

The plaintiff's first allegation is that the defendants failed to prove the availability of the nontestifying physicians. Before giving the *Secondino* charge, the court properly placed the burden on the defendants and conducted a hearing.[5] The court considered the defendants' offer into evidence of the subpoenas of those doctors that were served during the plaintiff's case-in-chief on May 2, 1989, commanding them to appear the follow-

[4] General Statutes § 52-174 (b) provides: "In all actions for the recovery of damages for personal injuries or death, pending on October 1, 1977, or brought thereafter, any party offering in evidence a signed report and bill for treatment of any treating physician, dentist, chiropractor, osteopath, natureopath or podiatrist may have the report and bill admitted into evidence as a business entry and it shall be presumed that the signature on the report is that of the treating physician, dentist, chiropractor, osteopath, natureopath or podiatrist and that the report and bill were made in the ordinary course of business."

After this trial, Public Acts 1989, No. 89-153, effective October 1, 1989, amended subsection (b) by adding: "The use of any such report or bill in lieu of the testimony of such treating physician, dentist, chiropractor, osteopath, natureopath or podiatrist shall not give rise to any adverse inference concerning the testimony or lack of testimony of such treating physician, dentist, chiropractor, osteopath, natureopath or podiatrist."

[5] The court thereafter stated:

"The Court: Well, I think we'll agree that the *Seperack* case does stand for the proposition that the giving of the *Secondino* charge is not opposed to the 52-174 statute, that they can both be given and were both given in this case. And the standard, I agree, the standard was whether or not the testimony to be taken from the doctors' reports are not merely cumulative, but do aid the jury in reaching its verdict. I indicated to you in chambers, both of you gentlemen, that I am very much concerned about the dilution effect of the statute by the *Secondino* charge, that it may open the door that whenever doctors' reports are submitted, that we read into them too much and we request a *Secondino* charge. And this will put the onus on the plaintiff, as counsel has indicated, to bring all of these doctors in. That's the danger of this and, therefore, the onus on requesting the *Secon-*

ing day. The court was also aware that the witnesses were the plaintiff's treating physicans, who were local doctors with offices in the community. These factors provided a reasonable basis for the court to allow the jury to consider the issue of availability.

The plaintiff's second allegation is that there was no basis for the *Secondino* charge because she would not have naturally produced the physicians. The plaintiff argues that there was no reason to present the physicians' testimony because it would have merely repeated the content of their reports, and therefore would have been cumulative.

In determining whether there is a proper basis for a *Secondino* charge in a case involving medical evidence introduced pursuant to General Statutes § 52-174 (b), we must carefully analyze the circumstances to ensure that the adverse inference is appropriate, but we must not permit a physician's report introduced pursuant to

---

*dino* charge must be, in this case, on the defendant in his argument to show the court that there are—there is room in the reports to show that if these doctors had come in, perhaps their testimony would have been damaging to the plaintiffs' case.

"I'm not impressed with argument that the lady did not go to the doctor and, therefore, we would draw the inference that 'Why didn't she go to the doctor?' This is dangerous. You're presuming too much when we say she didn't go to the doctor. We don't know why she didn't go back to the doctor?

"Having said that, however, I was impressed at the time of the testimony given by Dr. Garver, or interested and intrigued rather than impressed, by the fact that he did try to explain away an inconsistency as to what he considered a minimal bulge and what it meant in an MRI, I think, report. And I found that difficult to understand because it doesn't seem to me that 'minimal' is a word of art that is subject to such straining, although it may be. But it's a type of thing that I think could have been explained, had that doctor who wrote that report come in.

"Having said that, I am of the opinion, and, I'll tell you, I thought about this last night. I've read and reread the case and am of the opinion that I am going to give the *Secondino* charge with the statute. But I am going to warn you, counsel, that I don't want you to dwell on this so that the jury is confused by my charge."

this statute to gain credibility by implication or legislative fiat. See *Seperack* v. *Solaz,* supra, 689. The plaintiff has conceded that there are negative aspects to the medical reports of the nontestifying physicians, and that from them inferences can be drawn that are unfavorable to her case. None of these medical reports mentioned that the plaintiff struck her back on a step. A report by the plaintiff's family physician, who examined her the day after she fell, reported that he found no signs of hematoma, bruises or ecchymosis, which is inconsistent with the plaintiff's testimony that her back struck a step when she fell.[6]

The only medical witness called was Garver, who testified that although the other treating physicians found a minimal bulge or a minimal protrusion on the diagnostic studies of the plaintiff's injury to her lumbar disc, he considered the bulge to be significant. When asked which reports indicated a significant bulge, rather than a miminal bulge, Garver interpreted the other doctors' findings: "The statement on the MRI report, second paragraph, third line, there's a mild protrusion of the disc. That to me is similar to a significant bulge. Actually, that is of greater significance than a significant bulge. It's a different term describing a similar finding." Garver agreed that aging and work habits might cause mild disc protrusion, absent any specific trauma, but maintained that in medical parlance a significant bulge and a mild bulge are essentially equivalent.

---

[6] The lack of bruising, hematoma or ecchymosis indicated by the report is inconsistent with the plaintiff's account of the accident, but there are relevant facts beyond the scope of the report about which the doctor could have testified. One such fact is whether the plaintiff has maintained that her back struck the step since her primary treatment at his office. This question was not addressed by any of the reports. Although there are inconsistencies between the reports and the plaintiff's factual allegations, there may be more beyond the scope of the reports. Because the doctors have relevant knowledge that is beyond the scope of their reports, the trial court's decision to give an adverse inference instruction was proper. *Seperack* v. *Solaz,* 17 Conn. App. 684, 691, 556 A.2d 175 (1989).

Because Garver's testimony was inconsistent with the findings in the reports of the other treating physicians, the other physicians' testimony, in defending their reports or in refuting Garver's testimony, would have gone beyond the content of their reports, and would not have been cumulative. The court acted properly in finding a basis in the evidence to give the *Secondino* charge. In addition to that charge, the court read General Statutes § 52-174 (b) and (c) verbatim to the jury. The trial court also explained to the jury that it must decide whether an adverse inference should be made, and instructed it to consider General Statutes § 52-174 in making that decision.[7]

We conclude that under the circumstances of this case the court properly instructed that it was for the jury to decide whether to draw the inference permitted by *Secondino,* because the defendants presented sufficient evidence to allow the jury to determine whether the physicians were available and whether, "by virtue of their relationship to the plaintiff and the issues, [they] could reasonably have been expected to have superior information concerning the case, which, if favorable, the plaintiff would naturally have produced." *Seperack* v. *Solaz,* supra, 692.

The plaintiff's final claim is that the verdict was inadequate as a matter of law. She alleges that she sustained a lumbar injury because of the fall resulting in a 10 percent permanent partial disability of her lum-

---

[7] The court instructed: "Now, whether you are going to draw the inferences I indicated to you before is for you to decide. In considering whether or not it would be natural for the plaintiff to produce a witness the jury should consider the statute that I've just read to you which permits the plaintiff to introduce reports and bills of a treating physician without the necessity of producing the physician as a witness in the trial. And you should also consider evidence of the plaintiff's attempt to present these witnesses, if any, and the difficulties involved in procuring the doctor's in-court appearance."

bar spine, and has suffered for six years from the date of the accident. She claimed a 46.2 year life expectancy at the time of trial, medical expenses of $3203 and possible elective surgery in the future, resulting in additional medical expenses of $10,000. She alleges that an $11,300 verdict is so clearly inadequate that it shocks the court's sense of justice.

In reviewing the trial court's refusal to set aside the verdict, our task is limited to determining whether the court abused its discretion. *Herb* v. *Kerr,* 190 Conn. 136, 139, 459 A.2d 521 (1983); *Taddei* v. *Schwarz,* 12 Conn. App. 659, 660, 533 A.2d 892 (1987). A reviewing court must set aside the verdict if it is manifestly unjust and palpably against the evidence. *Malmberg* v. *Lopez,* 208 Conn. 675, 679–80, 546 A.2d 264 (1988); *Zarrelli* v. *Barnum Festival Society, Inc.,* 6 Conn. App. 322, 327, 505 A.2d 25, cert. denied, 200 Conn. 801, 509 A.2d 516 (1986).

The trial court should be hesitant to set aside a jury's verdict and must do so only when the verdict so shocks the sense of justice as to compel the conclusion that the jury was influenced by partiality, prejudice, mistake or corruption. *Trumpold* v. *Besch,* 19 Conn. App. 22, 31, 561 A.2d 438, cert. denied, 212 Conn. 812, 565 A.2d 538 (1989), cert. denied, 494 U.S. 1029, 110 S. Ct. 1476, 108 L. Ed. 2d 613 (1990). A court should be especially hesitant to set aside a jury's award of damages. *Zarrelli* v. *Barnum Festival Society, Inc.,* supra, 326. In this case, there was ample evidence, if accepted by the jury, to support the verdict. First, the plaintiff sustained a second injury. After her second fall, the plaintiff did not return to work, and her doctor recommended a total disc excision. Second, after her initial fall the plaintiff engaged in physically rigorous full-time employment, gave birth to two children, and conducted her life in a normal fashion. Finally, the only medical

witness testified that the bulge in the plaintiff's lumbar disc was of the type that is frequently caused by aging or work habits. If the jury accepted any of this evidence, it could have properly found that the sum claimed by the plaintiff was far greater than the harm actually suffered. The trial court found nothing present or lacking in the evidence that required it to disturb the jury's verdict. We agree. "Furthermore, a parsimonious jury award is not inadequate as a matter of law." *Shea* v. *Paczowski,* 11 Conn. App. 232, 235, 526 A.2d 558 (1987).

The judgment is affirmed.

In this opinion the other judges concurred.