[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This dispute between the plaintiffs and the defendants involves the interpretation of an agreement between the parties relating to building location and screening between their adjacent properties.
The plaintiff, Revonah Woods Property Owners Association, Inc. (Revonah Wood), is an association of property owners owning homes in a neighborhood to the east of Bedford Street in Stamford. The other plaintiff is Virginia Smeraldi, individually and as executrix of her late husband Richard's estate, who owns lane within the Revonah Woods area and abutting property of the defendants. The defendants are Rust Associates (Rust), a partnership and developer of a condominium project known as Chesterfield Condominiums, and one Richard Schlesinger, a principal of Rust.
This agreement between the parties provided for a Declaration of Restrictions which would be in recordable form and which imposed certain restrictions on the defendants' use of its property. The plaintiffs sued claiming that the defendants had failed to comply with the agreement, and they sought money damages and injunctive relief.
The matter was referred to Attorney Jane F. Donovan, an attorney trial referee, pursuant to General Statutes52-434(a) and Practice Book 428 et seq. The attorney trial referee concluded that the defendants had breached these restrictive covenants as to its screening provisions, and she recommended a monetary award to the plaintiff Smeraldi in the amount of $67,500, and to the plaintiff association for $60,000. The association itself owns approximately three acres of open space or park land within the general Revonah Woods Association area.
By way of background, the defendants had previously CT Page 4588 petitioned for and obtained approval for a change of zone of certain property consisting of approximately nine acres, and known as Parcel B on a subdivision map recorded in the Stamford Land Records as #9037. The defendants also own adjacent property known as Parcel A, which lies to the west of Parcel B, and consists of approximately 16 acres on which certain apartment units had been renovated and new units had been constructed, all known as the Chesterfield Condominiums. Both A and B are situated to the south of the plaintiffs' property. An appeal was taken by certain neighbors, and ultimately a settlement agreement was reached pursuant to which the plaintiffs in that case withdrew their appeal, and the restrictive covenant agreement was executed between Revonah Woods Neighbor Association and certain property owners in the Revonah Woods area, as well as the defendants. This agreement, which is dated January 24, 1985, and is recorded in the Stamford Land Records, provided that a screening plan would be implemented within an area of 35 feet back from the property line, and that existing vegetation within 25 feet of the line would not be disturbed.
The plaintiffs allege that the defendants ignored the screening plan and built its units within 10 feet of the property line rather than the 35 feet as set forth in the restrictive covenant agreement. They also claim that the defendants failed to implement the screening plan, and destroyed existing trees and vegetation. The plaintiffs seek an order that the screening plan be implemented as agreed, and that the defendants tear down and remove all buildings within 35 feet of the division line with the plaintiffs' property. The defendants filed special defenses of waiver, estoppel and latches, all of which in essence assert that the plaintiffs witnessed the condominium project being built, but did not complain.
In her report the attorney trial referee made a number of findings which may be summarized as follows: (i) that the agreement and the restrictions were executed for due consideration and were valid and binding; (ii) that the purpose of the restrictions was to protect the plaintiffs from the proposed development of condominiums by the defendants on its Parcel A; (iii) that the agreement and restrictions provided for screening between the property of the defendants and that of the plaintiffs, Revonah Woods Associates and the Smeraldis[1]; (iv) that the restrictions provided that within the 35 feet of the property line existing vegetation would be preserved and new trees planted; (v) that the screening CT Page 4589 plan and a proposed 35 foot building setback or buffer zone did not apply to the exact same area, but rather that the building setback requirements pertained to parcel B only, not A, whereas the screening provisions required screening along the southerly boundary of properties of Revonah Woods (the park land area) and Smeraldi, viz., that the screening plan referred to referred to Parcel A, where the construction was to take place, and not to Parcel B, which is evidently still undeveloped; (vi) The defendants failed to preserved existing vegetation, and did not comply with the screening plan along the property line between the northerly portion of Parcel A and plaintiffs' properties; (vii) that although Dr. and Mrs. Smeraldi did not sign the agreement they were beneficiaries thereof; and (viii) that the defendants had failed to prove waiver, estoppel or latches, as Dr. Smeraldi had in fact complained to the defendants about the construction that was underway. The attorney trial referee also recommended that a Lis Pendens filed in the Stamford Land Records relating to defendants' property be discharged.
Thereafter, and in accordance with Practice Book 438, the defendants filed a motion to correct. The defendants requested that Attorney Donovan add to her report that they had not removed any vegetation after the agreement had been enacted in January, 1985; that the Smeraldis were not a party to nor a beneficiary of the agreement; that Dr. Smeraldi had seen the construction and had not complained; that the "Premises" referred to in the agreement was intended to apply only to parcel B and the southerly part of parcel A, not the northerly portion of Parcel A adjacent to the property of the plaintiffs as determined by the referee; and that the screening agreement was not meant to apply to the park land area owned by the association.
The attorney trial referee did not make any substantive changes to her report, and the defendants filed objections thereto, Practice Book 441. The defendants did not file exceptions to the report, Practice Book 439, and it follows therefore that our task is ". . . limited to determining whether the subordinate facts were sufficient to support the ultimate factual conclusions." Ruhl v. Fairfield, 5 Conn. App. 104,106, 496 A.2d 994 (1985).
The essence of the objections by the defendants is that the screening in question was not intended to be in the area described by the attorney trial referee; that CT Page 4590 the Smeraldis did not own any property in the association and thus that the recommended award to Mrs. Smeraldi was erroneous; and that the award to the association because its park land had not been screened off did not make any sense since this property itself provided screening and more was not needed.
The attorney trial referee, who had bifurcated the trial into two parts, liability and damages, held a second hearing relating to damages, and she ultimately recommended a monetary award only, not injunctive relief, in the amount of $127,500 to the plaintiffs as representing the diminution in value of the two parcels belonging to Smeraldi and to the association due to the defendants' failure to comply with the screening plan.
Both plaintiffs and defendants filed motions to correct, as well as exceptions and objections to the supplementary report. The trust of plaintiffs' claim is that only monetary damages were awarded them, and they seek a court order requiring that the defendants plant screening in the area in question.
The defendants filed a motion to correct again claiming, among other things, that the screening provisions did not apply to the northerly portion of Parcel A. The defendants also complain that the attorney trial referee permitted one Peter Pisaretz, an appraiser, to testify in the second phase of the trial in the guise of a "rebuttal" witness. Mr. Pisaretz testified that in his opinion the Smeraldi property had been damaged in the amount of $67,500 by the failure of the defendants to comply with the screening agreement, which was the exact amount of damages later recommended by the attorney trial referee. The defendants object to this testimony on the theory that the second phase of the trial was limited to the question of equitable relief, but whether one labels the second hearing as pertaining to damages in general or just equitable relief it was, I believe, within the attorney trial referee's discretion to permit Pisaretz to testify to rebut evidence offered by defendants concerning the diminution of value of the plaintiff Smeraldi's property. The defendants' witnesses testified there was no impact at all on the property and plaintiffs presented a witness, Pisaretz, who testified to the contrary. Rebuttal evidence is permitted on these circumstances according to Shaham v. Capparelli, 23 Conn. App. 468,472, 581 A.2d 1065 (1990) (". . . refuted evidence given by the defendants (or) contradicted such evidence.") The attorney trial referee did not change CT Page 4591 her recommendations in response to the motions to correct.
Before analyzing these exceptions and objections, the standard or review that this court is obliged to follow in evaluating reports of attorney trial referees should be reiterated. This subject was recently addressed in Pilato v. Kapur, 22 Conn. App. 282, 283, 576 A.2d 1315
(1990), which held that the trial court "was bound by the attorney referee's finding of fact" although not by his conclusions of law. The role of the attorney trial referee was also discussed in Dills v. Enfield, 210 Conn. 705,714, 557 A.2d 517 (1989), which held that (i) the trial court may not "retry the case"; (ii) a court may not find additional facts or reject facts found by the referee unless, in the words of Practice Book 439, "a material fact has been found without evidence or the (referee) has failed to find an admitted or undisputed fact, or has found a fact in such doubtful language that its real meaning does not appear"; and (iii) a trial court may not engage in "fact-finding contrary to the report of the referee." Id., 716.
The essence of the attorney trial referee's report is that the defendants did not comply with the screening provisions by virtue of their having destroyed some existing vegetation and by refusing to plant trees and other vegetation as promised. Smeraldi was awarded $67,000 as her home looks out over the area where the screening plan should have been implemented, and the association itself was damaged according to the report in the amount of $60,000 because it owned some three acres of open space and park land, which would have benefited from the screening agreement, as this property was also capable of being developed into buildable lots, albeit with difficulty because of wetlands and required approval of adjacent neighbors. On the other hand, she rejected the claim by plaintiffs that the buffer zone, the 35 foot setback requirement, also applied to the northerly portion of Parcel A. In short, the referee decided the screening claim in favor of the plaintiffs and the buffer or setback controversy in favor of the defendants.
The attorney trial referee stated that she did not recommend affirmative injunctive relief regarding screening as requested by plaintiffs because she believed that the monetary award adequately compensated the plaintiffs, and also because the Lis Pendens on the Stamford Land Records pertained to Parcel B, and did not CT Page 4592 give the many new purchasers of condominium units in Parcel A any notice of any possible obligation to provide screening.
The defendants argued that the plaintiff association is not entitled to any money because it has not been damaged since its park land had restrictions on it and was essentially unbuildable. The referee rejected this claim as previously pointed out and found that the park land had also been damaged by the defendants' breach of the screening agreement.
Viewed in the light of the mandatory standards for review this court is not inclined to find any additional facts or to delete any of the facts found by the referee. She heard the witnesses and, as stated in Faulkner v. Marineland, Inc., 18 Conn. App. 1, 4, 555 A.2d 1001
(1989): "[w]eighing the evidence and judging the credibility of the witnesses is the function of the trier of fact and this court will not usurp that role." Moreover, Wilcox Trucking, Inc. v. Mansour Builders, Inc., 20 Conn. App. 420, 425, 567 A.2d 1250 (1989), states that: "[i]n a contract action, findings of fact should be overturned only when they are clearly erroneous."
In conclusion, the findings of fact and the recommendations by the attorney trial referee are accepted in accordance with Practice Book 443, as I find no material error in her recommendations or any other reason why the report is unacceptable. I believe her conclusions of fact were "properly reached on the basis of the subordinate facts found." She interpreted the agreement in what I believe is a logical and reasonable fashion.
Accordingly, judgment may enter for the plaintiff Smeraldi against the defendants in the amount of $67,500, and $60,000 for the plaintiff Revonah Woods Property Owners Association, Inc., with prejudgment interest thereon at the statutory rate from February 1, 1988, the date recommended by the attorney trial referee because that was the date of the court hearing at which Judge Cioffi told the defendants that they could continue to build the condominiums, but only at their "peril."
In addition, the defendants are awarded $39,995.50 for attorneys fees and $7805 in disbursements in accordance with the recommendation of the attorney trial referee, as the agreement provided for reasonable CT Page 4593 attorneys fees if the plaintiffs proved that the defendants had violated the screening agreement. If the parties are unable to agree on the amount of interest, the issue should be claimed for the short calendar for calculation by the court. All Lis Pendens currently of record shall be released upon satisfaction of this judgment. Costs as taxed by the clerk are awarded to the plaintiffs.
WILLIAM B. LEWIS, JUDGE